| 74  | 149 |
| 152 | 565 |

# Levick et al. versus Brotherline.

1. Unseated land sold for taxes in a senior warrantee's name is redeemed by the payment of the taxes, &c., by a junior interfering warrantee; the redemption enures to the benefit of the true owner.

2. The party redeeming can not defeat the redemption by withdrawing the money after the time for redemption has passed.

3. A married woman, her husband not joining, conveyed her land to Levick, who went into possession; she and her husband afterwards conveyed to Brotherline for $500, on the representation that they were perfecting the title of Levick. Held, that if they executed the deed relying on the representations, it was void notwithstanding the money consideration.

4. In an ejectment for the land by Brotherline against Levick and others, Levick could set up the fraud in avoidance of the deed.

5. Shearer v. Woodburn, 10 Barr 511, followed.

May 22d 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of Blair county: No. 56, to May Term 1873.

This was an ejectment brought April 18th 1870, by John Brotherline against Carey Murdock, Richard Levick and George L. Trask, for two tracts of land, one surveyed in the name of Timothy Lewis, and the other in the name of Aaron Bowen, adjoining the Timothy Lewis tract.

The case was tried November 1st 1872, before Dean, P. J. The plaintiff gave in evidence warrants, February 5th 1793, to Lewis and Bowen respectively, and surveys, August 5th 1793. Patent to John Kunkle for the Lewis tract, January 29th 1795, and for the Bowen tract, February 25th 1795.

The will of Kunkle proved December 9th 1798, devising these tracts with others to his five children, and divers conveyances passing the title of all the devisees to Isaac F. Longstreth, August 19th 1816; deed July 22d 1820, Longstreth to Joseph Howell; deed October 18th 1821, Howell to David Wilson; deeds July 24th 1827, Wilson to his children, Elizabeth Wilson, Hannah Wilson and David Wilson, Jr. Sale of the Lewis tract for taxes and treasurer's deed June 25th 1852, to the plaintiff; deed April 14th 1870, William Cloke, Jr., and Hannah his wife, late Hannah

Wilson, for her interest (being an undivided half) in the two tracts, for the consideration of $750. The plaintiff here rested.

The defendant then gave in evidence, warrants March 5th 1794, to David Bell, William Bell and Valentine Bell, and surveys July 28th 1837, in pursuance of the warrants. They gave evidence that these warrants and surveys covered that part of the two tracts which was in Blair county, except a small piece at the east end of the Lewis tract. They gave in evidence the sale of the Bell warrants for taxes, June 10th 1844, to A. P. Wilson, and deeds to him June 17th; deed March 17th 1863, A. P. Wilson and Gilbert L. Lloyd, to Carey Murdock, for the David Bell and William Bell tracts, the deed reciting a conveyance June 9th 1846, by James Ross to Samuel Calvin, and a conveyance June 4th 1847, by Calvin to A. P. Wilson and Lloyd. Deed April 7th 1863, Murdock to A. P. Wilson, for an undivided half of the David and William Bell tracts. Deed March 25th 1864, A. P. Wilson to George L. Trask, defendant, for an undivided half of the same tracts. They then gave evidence that the taxes on the David and William Bell tracts for 1849, 1850, were paid by Lloyd June 5th 1852; also that the taxes for the same years on the Valentine Bell tract were paid by A. P. Wilson on the same day. They gave evidence as follows: Elizabeth Wilson, a daughter, and one of the grantors of David Wilson, married William Henry Smith, and died at the birth of their only child, also named William Henry Smith. The father went away in 1843, and had not since been heard of. David Wilson, Jr., died unmarried and without issue in 1846; and David Wilson, the father, had long been dead. Deed August 3d 1864, to Richard Levick, for the Lewis tract, from William H. Smith, the son, and Hannah Fuller, formerly Wilson, afterwards Cloke, and one of the grantors of the plaintiff, recorded September 22d 1864.

S. J. Stevenson testified that he had been the guardian of William H. Smith; that Heylman negotiated for the purchase of the land for Levick in August 1864 from Mrs. Cloke and W. H. Smith; witness was then also agent for Mrs. Cloke; they saw little of Levick, the negotiations were through Heylman; witness testified further for the purpose of showing fraud in the conveyance by Mrs. Cloke to Brotherline.

Hannah Cloke in her deposition testified:—

"John Heylman, I think in the spring of 1870, called to see my husband several times and went out with him; subsequently he called at the house and asked for my husband. I told him my husband was not fit to talk to any one. He was asleep, and I did not like to call him. He asked me if I thought he would sign his name for him. I told him I didn't know; that he wanted more money. He said the parties were not willing to

give any more; he thought that was enough for his name. Then he said they had my name and he might as well sign his, for all he had in it was a life-interest, and at his death there was no more. He said the parties had already given so much that they were unwilling to give any more. He said he wanted to make their deed good and then he was going on to New York. I thought he was speaking of the deed I had make to Mr. Levick and that it was the same thing he (John Heylman) had arranged for the first deed. He in no way intimated that he was asking for a deed to another party. - When I signed my name to the deed that he produced, I thought I was making it all right for the first party, and that it was the same one thing. The deed was not read to me in full by any one; no names or parties were read at all; they read something about the tracts, but no names. The alderman read no part of it to me. He said in a very quick manner, 'Do you acknowledge that name?' He talked very short to me, I thought. I signed the deed here in this room. My husband, when he signed the deed, was not in a fit condition to sign anything. After my husband had signed the deed (Mr. Heylman had not seemed to want my name) he (Mr. Heylman) said, Would you not sign your name to this deed? It would look better to have both names together. He had told me that they only wanted my husband's name, that they had my name, and he might as well sign his name, as he only had a life-interest at any rate, and that at his death there would be no more of it. From what Mr. Heylman said to me I thought I was perfecting the title of the first party, Mr. Levick. He paid me $500. I never heard Mr. Brotherline's name in this transaction; never knew there was such a man until long afterwards. He (Heylman) never paid anything more than this five hundred dollars."

W. Cloke, the husband, testified to facts in corroboration of his wife's evidence, and that he did not know that the deed was to Brotherline; also to other facts tending to show fraud in procuring the conveyance from Mrs. Cloke and himself.

Some other evidence having been given by the defendants they rested.

The plaintiff in rebuttal gave evidence showing that one John Brown, February 21st 1794, became the owner of the David and William Bell warrants, that on his death intestate, letters of administration of his estate were granted, September 4th 1824, to James Ross and Zachariah G. Brown; the children of Brown gave a power of attorney to Ross.

Under objection and exception, plaintiff gave evidence as follows:—

Extract from the sale-book of the treasurer of Huntingdon county (from which Blair county was afterwards created), in relation to the sales of the Bell tracts to Wilson in June 1844:—

[Levick *v.* Brotherline.]

" Deed made out and lifted.    Bond given.
1846, June 8th.  Redeemed by James Ross, per Samuel Calvin, Esq.,
and excepted to by A. P. Wilson,                        $5.71 paid.
Sold to    .    .    .    do.                    .          1.50  "
" Deed made out and lifted, $4.50.    Bond given.
1846,  June  8th.   Redeemed  by  James  Ross,  per
Samuel  Calvin,  Esq.,    .    .    .    .    .    .    5.62  "
And excepted to by A. P. Wilson."

He gave evidence that the amount of these redemptions was
charged by the auditors to the county treasurer, January 5th
1847.  He gave in evidence from the treasurer's book these
entries :—

" Redemption-money lifted and right of redemption for the
William Bell tract abandoned by me.        JAMES ROSS.
                                    " Per S. CALVIN."

And a precisely similar entry as to the David Bell tract.    Also
receipt :—

" David Bell, $5.62.    Received payment November 12th 1847.
                                    " JAMES ROSS.
                                    " Per S. CALVIN."

He gave evidence also, in answer to the defendant, on the
question of fraud in procuring the deed from Mrs. Cloke.

There were no points submitted by either party.

The court, after stating the evidence on which each party based
his title, charged :— * * * " Then the plaintiff's claim, so far as it
depends on the treasurer's deed failing, has he shown a right to the
possession of any portion of the land, under the deed of Hannah
Cloke of April 14th 1870 ?   This deed, if not obtained by fraud,
being in proper form, joined in by her husband and duly acknow-
ledged, put in her vendee, whatever title Hannah Cloke, at the date
of it, had to the land.   What title had she ?   The defendants allege
that as to the Timothy Lewis tract, or that portion of it to which
they take defence, she had none, because this portion, under the
names of Valentine, David and William Bell, had been (on the 17th
of June 1844) sold to A. P. Wilson, for non-payment of taxes regu-
larly assessed in Huntingdon county.   So far as appears from the
evidence, the tax for the year 1842 was assessed and unpaid ; and
this being the fact, the purchaser, A. P. Wilson, took all of the
Lewis tract covered by these Bell surveys, subject, however, to the
owner's right of redemption within two years.   If within that
time there was not such redemption as the law requires, the land
became Wilson's absolutely, and Hannah Cloke had no land, so
far as affects this issue, to convey to Brotherline, on the 14th of
April 1870.

[" But the plaintiff claims that the Bell tracts were redeemed

[Levick v. Brotherline.]

within two years, and that redemption inures to the benefit of the owner, and that therefore the deed to Wilson is ineffectual to pass title. The entries on the treasurer's sale-book in Huntingdon county are relied on as evidence of the redemption. These have been read to you. So far as concerns the David Bell and William Bell tracts, the redemption-money was paid within the two years. Nothing done after the expiration of the time for redemption could make the redemption void or give life to Wilson's deeds, if the payment of the money was within the time, in such amount and by such person as the law requires. The defendants deny that the money was paid by one who had a right to redeem; and they ask us to say to you that the owner of the land alone can redeem; that James Ross, who paid the redemption-money, was at most only the owner of the Bell warrants, junior warrants, laid on the Aaron Bowen and Timothy Lewis's forty years after the land had been granted by the Commonwealth to Bowen and Lewis, and therefore, in no view of the evidence in this case, can he be considered the owner of the land or the one having a right to redeem. We cannot so instruct you. These Bell surveys were made and marked on the ground; were returned into the Land Office and accepted; the land which they purported to cover was assessed and sold in their names. It may be—probably would be—in a contest as to location, between these older and younger warrants, the owner of the Bowen and Lewis would take the land; but we are, nevertheless, of the opinion that the owner of interfering warrants, located and surveys marked on the ground, the taxes assessed and the land sold in the name of the warrants, has a right to redeem, and that a redemption by him, in effect, makes void the treasurer's deeds. Then, so far as the David Bell and William Bell tracts are concerned, there was no title in A. P. Wilson to convey, and in this case the deeds for them to him must be treated as if they had not been made.] As to Valentine Bell, there is no evidence that any money was paid to redeem it, and to the extent that the land in controversy here is covered by the survey on that warrant, Hannah Cloke, at the time she made the deed to Brotherline, had no title, and therefore the plaintiff has none to that much of the land. You will see from the draft in evidence what portion is covered by the Valentine Bell. As we understand, there is no controversy as to the quantity.

But, the defendants further claim that Hannah Cloke, at the time she made the conveyance to Brotherline, had no title to any portion of the Aaron Bowen and Timothy Lewis, because, before that date, viz: August 3d 1864, she had conveyed all her interest in these tracts to Richard Levick, one of the defendants. The two deeds of August 3d 1864, have been read in evidence, and purport to convey all the interest of Hannah Fuller in these two tracts. It will be observed no husband joins with her in executing the

[Levick *v.* Brotherline.]

deeds. The plaintiff has read in evidence the deposition of a Mrs. Richardson, who testifies that she was well acquainted with Hannah Fuller about the time and before the execution of the deeds to Levick, and that at that date she was a married woman; this is not denied by defendants. Assuming it then to be a fact, those deeds are void, and passed no title to Levick so far as Hannah Fuller is concerned. She was the owner of the land after the delivery of those deeds, as before, and must be so treated here. The deed of a married woman, in which her husband does not join, passes no estate. Then, Hannah Cloke having been the owner of the undivided half of these lands in 1844, at the date of the sale to A. P. Wilson, she lost whatever portion of the two tracts is covered by the survey in name of Valentine Bell, and no more; the David Bell and Wm. Bell having been redeemed, her title to the land covered by them is not affected by that sale; and Hannah Cloke, having been a married woman (a husband, one Fuller, living,) at the date of the two deeds, of 3d August, 1864, to Richard Levick, and this husband not having joined with her in executing these deeds, her title to the land was unaffected by them; and so far as appears from the evidence in this case, on the 14th day of April, 1870, when she and her husband, Wm. Cloke, conveyed to Brotherline, she was the owner of the undivided half of the Aaron Bowen and Timothy Lewis tracts, less that part covered by survey in name of Valentine Bell.

" Up to this point, however much the counsel on each side have differed in the conclusion to be drawn from these facts, and however much we have differed from both in our conclusions, there has been no difference of opinion as to what the facts are, and consequently, there has been no contradictory evidence, or disputed fact for your consideration.

" The plaintiff must recover, if he recover at all, the undivided half of the Aaron Bowen and Timothy Lewis tracts, less that part covered by survey in name of Valentine Bell, under his deed from Hannah Cloke and husband, of 14th April 1870. This deed is properly executed, and, if nothing else appeared, it would carry with it the right of possession to this portion of the land.

" But it is urged here by the defendants, and they have adduced evidence tending to prove, that this deed was obtained from Hannah Cloke and her husband by means of false representations made to her by the plaintiff; and defendants claim that, having been procured by fraud, the title to the land which it purports to convey is still in her, and therefore the plaintiff cannot recover. The plaintiff on this point asks us to instruct you :

" 1. That there is no evidence of such fraud as will avoid this deed, as between the parties to it.

" 2. That, if it was obtained by fraud, the defendants being strangers to the fraud, cannot here set it up as a defence. On

[Levick v. Brotherline.]

this point we are of the opinion that there is evidence to be submitted for the determination of a jury ; and while, if the defendant here, Richard Levick, were an intruder or trespasser, without color of title, he could not set up in defence of his possession, the alleged fraud upon Mrs. Cloke and her husband, we cannot regard him as standing in such a relation to the parties here, if the evidence shows what is claimed for it by the defendants.

" It appears that Levick, one of the defendants, purchased, for a good consideration, from Mrs. Cloke—then Mrs. Fuller—her interest in the land, took possession under his purchase and so remained from August 1864 until the service of the writ in this case.

" The defendants claim, from the evidence, that, Brotherline being aware that the instrument by which this purchase was consummated was void, employed one John C. Heylman, who had acted as the agent of Levick in negotiating the sale of August 1864, to obtain from Mrs. Cloke and her husband a second deed for the premises ; that Heylman, representing to her husband and inducing her and her husband to believe that this second deed was to Levick, merely for the purpose of perfecting the first conveyance, he obtained their signatures to it ; that, relying upon these representations, they executed the second deed, which they would not otherwise have done.  You will consider the evidence, from which it is claimed this is established.  [If Heylman, the agent of plaintiff, falsely represented to the Clokes that they were merely making a deed to confirm the possession of the land to Levick, land which she had before sold to him, and of which he was in possession, and by means of such false representations, and these alone, obtained a deed for Brotherline, it seems to us that it would be iniquitous here to permit Brotherline to use that deed to dispossess Levick ; and we instruct you that he cannot so use it, and reap the fruits of fraud, even in this action between him and Levick. The proof of this alleged fraud must be clear and satisfactory, and must show, not alone that false representations to the Clokes were made by Heylman, but that he falsely represented the deed they were making was to Levick ; and not this alone, but it must satisfactorily appear that, relying upon these false representations, they made the deed.  As we have said, the title was still in Mrs. Cloke ; there was nothing to prevent her conveying it to another ; if to obtain more money, and not relying on false representations of Heylman, she made the second deed, the plaintiff has a right here to recover upon it.]  * * *

" The whole evidence on the question is for you.  If Heylman falsely represented to the Clokes that they were perfecting a deed to Levick, and they believing him, and acting under this belief, and this alone, executed the deed to Brotherline, it was such a

[Levick *v.* Brotherline.]

fraud as will prevent Brotherline from here using that deed to dispossess Levick. The evidence to show this fraud must be clear and satisfactory, and if it does so show it, your verdict should be for the defendants.

"If the evidence fails to satisfy you of the fraud, then your verdict should be for the plaintiff, for the undivided half of the land described in the writ, to which defendants take defence, less that portion covered by survey in name of Valentine Bell."

The jury found "for the plaintiff the undivided one-half of the land described in the writ, for which defendants take defence, less that portion covered in the survey in name of Valentine Bell."

The defendants took a writ of error. They assigned for error the admission of the evidence objected to, and the parts of the charge in brackets.

*S. Calvin* and *L. W. Hall* (with whom was *D. J. Neff*), for plaintiffs in error.—The redemption-money of the land having been received again by Ross, the land was not redeemed: Strauch *v.* Shoemaker, 1 W. & S. 166; Harper *v.* McKeehan, 3 Id. 238; McCoy *v.* Michew, 7 Id. 386. Land sold for taxes can be redeemed only by the true owner or his agent: McBride *v.* Hoey, 2 Watts 436; Cox *v.* Sartwell, 9 Harris 481; Orr *v.* Cunningham, 4 W. & S. 294.

*S. S. Blair*, for defendant in error.—Payment of taxes by the owner of a junior interfering avoids a sale for taxes in the name of the senior survey. An agent may redeem: Patterson *v.* Brindle, 9 Watts 98. An adverse claimant may redeem: Shearer *v.* Woodburn, 10 Barr 511.

Mrs. Cloke's deed, she being married, was void, and gave Levick no right in law or equity: Rumfelt *v.* Clemens, 10 Wright 455; Glidden *v.* Strupler, 2 P. F. Smith 400. Mrs. Cloke only could have been heard to complain of fraud: Hunt *v.* Crawford, 3 Penna. R. 426; Coxe *v.* Blanden, 1 Watts 533; Blyholder *v.* Gilson, 6 Harris 134.

The opinion of the court was delivered, March 2d 1874, by

WILLIAMS, J.—If Ross was the owner of the Bell warrants, as the jury must have found, then, under the ruling of this court in Shearer *v.* Woodburn, 10 Barr 511, he had such a title as authorized him to redeem the land sold for the non-payment of the taxes assessed in their name. If his title was invalid as against that acquired under the prior warrants and surveys, his redemption of the lands enured to the true owner; and it was not in his power to defeat or annul it by withdrawing the money paid the treasurer after the time allowed for redemption had expired. To hold that he might, would open the door to fraud and collusion by which the

[Levick v. Brotherline.]

title of the real owner might be swept away after the land had been actually redeemed. There was no error, therefore, in admitting the evidence of the redemption of the land by Ross, and in instructing the jury, in effect, that as owner of the junior interfering warrants and surveys he had the right to redeem, and his redemption avoided the treasurer's deeds.

But there is more ground for the complaint that the jury were misled by the manner in which the question of fraud in obtaining the conveyance from Mrs. Cloke and her husband to the plaintiff was submitted to them. Under the evidence the court should have instructed the jury in clear and explicit terms that if Heylman, the plaintiff's agent, falsely represented to Mrs. Cloke and her husband that he was procuring the deed for Levick—to whom Mrs. Cloke had previously sold and executed a deed for the land —for the purpose of perfecting his title; and if relying on these representations they executed the deed believing it was to Levick, then the conveyance was void by reason of the false representations by which it was obtained, and vested no title in the plaintiff as against the parties affected by the fraud. But if they were not induced to execute the deed by false representations of Heylman, if, knowing that it was to the plaintiff, they executed it for the purpose of conveying to him their interest in the land, it was valid and vested in him a good title.

Undoubtedly the money which they received as a consideration for the conveyance was an inducement to its execution. But if, trusting to the false representations of Heylman, they executed it believing that it was to Levick, and would not have executed it if they had known that it was to the plaintiff, it was just as fraudulently procured as if it had been obtained for a nominal consideration. The fraud consisted in procuring the conveyance to the plaintiff by falsely representing that it was to Levick, and by the offer and payment of the money as an inducement to its execution. The payment of the money did not render the transaction honest and valid if it was one of the means used to accomplish the fraud. And in this aspect of the case we think the charge was calculated to mislead the jury. The court said: "If Heylman, the agent of plaintiff, falsely represented to the Clokes that they were merely making a deed to confirm the possession of the land to Levick—land which she had before sold to him and of which he was in possession—and by means of such false representations, *and these alone*, obtained a deed for Brotherline, it seems to us that it would be iniquitous to permit Brotherline to use that deed to dispossess Levick." Undoubtedly the deed was void if it was obtained "by means of such false representations;" but it does not follow that if it was not obtained by "these alone," it was not fraudulent and void. Can there be a doubt that if Mrs. Cloke and her husband were induced to make the conveyance by the false

[Levick *v.* Brotherline.]

representations of Heylman that it was to Levick and by the consideration they were to receive for its execution, that it was fraudulently obtained, if they would not have executed it if they had known that it was to the plaintiff? But if the consideration which they received for the deed was an inducement to its execution, then it was not obtained by means of *the false representations alone.* And if not, the jury were left to infer that it was not void and that the plaintiff might recover upon it. Under the evidence the jury could not have come to any other conclusion than that Mrs. Cloke and her husband were more or less influenced in making the deed by the pecuniary consideration they were to receive, and that they were not induced to execute it by the false representations of Heylman *alone.* In this respect the charge was calculated to mislead the jury, and in all probability did mislead them, unless there was some reason for disbelieving the testimony in relation to the fraud not disclosed by the record. And this misleading instruction was substantially repeated at the conclusion of the charge where the jury were told: "If Heylman falsely represented to the Clokes that they were perfecting a deed to Levick, and they believing him, and acting under this belief, *and this alone,* executed the deed to Brotherline, it was such a fraud as will prevent Brotherline from here using that deed to dispossess Levick."

The court may not have intended to tell the jury that if the deed was obtained by means of the false representations of Heylman, and these alone, it was void and vested no title in the plaintiff; but if it was obtained by the false representations and the payment of money as an inducement to its execution, it was not void, and the plaintiff might recover upon it. But if the charge was calculated to leave this impression on the minds of the jury, as we have endeavored to show, it was not such a charge as the defendants were entitled to under the evidence. If the testimony is believed, the deed was obtained by gross fraud; and Levick has a right to complain of it, because he is affected by it. The deed was procured for the purpose and with the intention of using it to dispossess him, as this ejectment shows. Why, then, has he not a right to set up the fraud in avoidance of the deed? He bought the land of Mrs. Cloke—then Mrs. Fuller—and paid her a full consideration for it. It is true that, being a married woman, her deed vested in him no title to the land, because her husband did not join with her in executing it. But he was in possession of the land under his contract of purchase, and but for the fraud of the plaintiff, his possession would not have been interfered with or disturbed. If the deed was made for the purpose of perfecting his title and confirming his possession, what right has the plaintiff to use it to dispossess him? To permit him so to use it would be iniquitous and a scandal to the administration of justice.

Judgment reversed, and a *venire facias de novo* awarded.