## Williams et al. *v.* Kerr et al., Appellants.

*Vendor and vendee—Misrepresentations—Equity.*

Fraud without the concurrence of injury affords no ground for relief in equity; but it is such injury as will be redressed by equity, to obtain from an owner, by a false representation of a fact which he deems material, property which he would not otherwise have parted with upon the terms which he is thus induced to accept.

A decree for a reconveyance of land will be made where it appears that the owners of the land were induced to sell it by a false representation of the vendee, that a foundry and machine shop would be immediately erected upon the property which would greatly enhance the value of their remaining land; and that but for the falsehood and deception practiced upon them they would not have accepted the price that was paid them.

*Costs—Fraud by agent—Principal and agent—Improvements.*

Where a bill in equity is filed against a principal and agent to compel the reconveyance of land bought by the agent in his own name, but on account of his principal, and it appears that the sale was effected through the false representations of the agent, the principal will be charged with costs, if he does not promptly, after the bill is filed, disavow the fraud, and consent to a decree against the agent. With regard to the improvements the parties stand on no higher ground than does a trespasser.

Argued Nov. 10, 1892.    Appeal, No. 181, Oct. T., 1892, by defendants, William C. Kerr and C. M. C. Harper, trading as Kerr & Harper, and Oscar E. Kreuger, from decree of C. P. No. 2, Allegheny Co., Oct. T., 1891, No. 529, in bill in equity by Joseph D. Williams and wife.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity for reconveyance of land.

The case was referred to James M. Cook, Esq., as master, who found the facts to be as follows :

" That Mary A. Williams was the owner in fee and in possession of the herein described piece of ground ; and that she, with her husband Joseph D: Williams, by deed of date, July 2, 1890, acknowledged same day and not recorded, conveyed to Oscar E. Kreuger, in fee, all that certain tract or piece of ground situate in Elizabeth township.

" That said piece of ground was purchased by and in the name of Oscar E. Kreuger, under articles of agreement of date June 26, 1890, with plaintiffs for manufacturing purposes at the price of $250 an acre, one half to be paid in cash on delivery of deed, the balance in two years at six per cent interest, payable semiannually.

" That on July 2, 1890, the plaintiffs made and executed a deed for same to Kreuger, the consideration therein being $1,250—$75.00 of which was paid plaintiffs on signing agreement, $550 on delivery of deed, and the balance secured to them by bond and mortgage of Kreuger on the ground.

" That Jacob W. Taylor, president, and one of the managers of the McKeesport Machine & Foundry Company and Oscar E. Kreuger, real estate agent, of McKeesport, were employed by Kerr & Harper to purchase the ground from plaintiffs, and in this deal were the agents of said firm.

" That Kerr & Harper, during the negotiations of Taylor and Kreuger with plaintiffs and the purchase of the land, were engaged in manufacturing brick, excavating and marketing sand loam, etc., upon other adjoining ground purchased of plaintiffs some years prior.

" That plaintiffs had refused to sell said firm any additional ground to be used and operated in this manner.

" That with this information Kerr & Harper employed Jacob W. Taylor first, and later Oscar E. Kreuger, to enter into negotiations with plaintiffs and consummate the purchase.

" That said Taylor and Kreuger called upon plaintiffs separately and together, Mr. Taylor representing himself to be the president and one of the managers of the McKeesport Machine & Foundry Company, Mr. Kreuger representing himself to be interested in and associated with said company; that they were crowded for room in McKeesport, and that they were now on hunt of a site to which they would move and locate their works; that they could be on the grounds in sixty days or thereabouts, ready for business, and at the start would employ forty men; this, together with the effect such a lead would have upon plaintiffs' remaining land, they offered as an inducement to plaintiffs to sell, and at a reduced figure.

" That the value of the ground plaintiffs put at $500 an acre, but relying upon the representations of Taylor and Kreuger to be true, they reduced the price to $250 per acre, and the sale was consummated.

" That the representations made by Taylor and Kreuger were false and untrue. The land was not being purchased for the McKeesport Machine & Foundry Company. And this fact the agents knew before and throughout the entire negotiations.

" The sale was consummated only upon the express assurance by the agents to plaintiffs that the land was not for Kerr & Harper, but for the company they represented.

" That Kerr & Harper, the party purchasers, if they did not know the exact language or the extent of their agents' efforts, they did know that the land could not be secured to them if they were known in the deal.

" That some weeks after the purchase was consummated, probably about the early part of August, 1890, defendant firm went into possession of the land, erected some buildings, moved their machinery and appliances, and in conjunction with their adjoining works began to excavate and use the sand loam."

The master recommended a decree in accordance with the prayers of the bill. Exceptions to the master's report were dismissed, and the court entered the following decree:

" 1. That the report of the master and his findings of fact be confirmed absolutely.

" 2. That Oscar E. Kreuger was the agent for William C. Kerr and C. M. C. Harper in the purchase of the land.

" 3. That the deed from Joseph D. Williams and Mary A. Williams, his wife, of date July 2, 1890, to Oscar E. Kreuger for the land in dispute, be declared void by reason of the false and fraudulent representations and that said Kreuger make, execute and deliver to Mary A. Williams a deed for the land in dispute upon the payment of six hundred and twenty-five dollars of purchase money to William C. Kerr and C. M. C. Harper, and surrender to said Kreuger his bond and mortgage dated July 2, 1890.

" 4. That the defendants, William C. Kerr and C. M. C. Harper and Oscar E. Kreuger pay the costs of these proceedings, including the master's fee of $200."

*Error assigned*, inter alia, was decree, quoting it.

*W. B. Rodgers, John Ewing Speer* with him, for appellant, cited 1 Story, Eq. 201; Marr's Ap., 78 Pa. 69; 2 Pomeroy, Eq. § 898; Bispham, Eq. § 217; Fellowes v. Lord Gwydyr, 1 Sim. 63; Dent v. Long, 90 Ala. 172; 1 Bigelow, Fraud, 277.

*John D. Shafer, T. C. Jones* with him, for appellees, cited Fisher v. Worrall, 5 W. & S. 483; Tyson v. Passmore, 2 Pa. 124; Dent v. Long, 90 Ala. 172.

OPINION BY MR. JUSTICE HEYDRICK, January 3, 1893:

The findings of the master are fully warranted by the evidence. Indeed, he might have found from the testimony of the appellants and that of their witness, Taylor, that they procured the deed to be obtained by falsely holding out to the plaintiffs as an inducement that a foundry and machine shop were to be immediately erected upon the property, which would greatly enhance the value of their remaining land; and that but for the falsehood and deception practiced upon them they would not have accepted the price that was paid them, or made the conveyance upon any terms whatever. Kerr and Harper testified that they could not purchase from Mrs. Williams, and for that reason employed Taylor to buy the land ostensibly for himself; that after an abortive attempt to execute his commission he reported that " for him to buy it he would have to lie too much," and recommended the employment of Kreuger; and that they thereupon employed the latter. And Taylor

testified that he told the plaintiffs he was president of the Mc-Keesport Machine Company; that he "was buying the land for manufacturing purposes;" that they "were under the impression that he was trying to buy it for a foundry and machine shop;" that later in the negotiations Kreuger, in his presence, represented to them that he was purchasing the ground for a foundry and machine company, and spoke about the works enhancing the value of their other property; and finally got them down from $400 or $450 per acre to $250. Kerr says he told Taylor that he did not want the land "if it took lying to buy it." But why did his firm employ Kreuger if it was not to do the lying without which Taylor plainly told him it could not be bought? The moral quality of the act of holding on to the fruits of a fraud perpetrated by an agent in the transaction of business committed to him differs not from that of the concoction and perpetration of the fraud; and when in addition the principal knew beforehand that the agent must resort to it or fail, and selected him with reference to his qualifications for that particular kind of work, as may be fairly inferred was done in this case, it is persuasive evidence that the particular fraud had been expressly authorized, or that the agent had been given carte blanche as to the means to be employed by him.

The appellants having shown so much themselves, it requires no credulity to believe the details of Kreuger's shameful mendacity, confessed by himself under oath, or to accept as verity the testimony of the plaintiffs and their daughter. It shows that the property of an old lady having an enfeebled husband was, by deliberate falsehood, obtained from her for persons to whom, and to be used for purposes for which, she would not have sold it upon any terms whatever, because she believed such user would be injurious to her remaining property; and that it was so obtained for one half that which she considered it worth upon the inducement falsely held out to her that it was to be immediately devoted to a purpose that would greatly enhance the value of the residue of her land.

In reply to the case thus made against them the appellants undertook to show that they paid all the land was worth, and now say that fraud without damage is no ground for relief in either law or equity, and because, in the estimation of others, Mrs. Williams sustained no pecuniary damage, she is not enti-

tled to relief. It is quite true that fraud without the concurrence of injury affords no ground for relief in equity. But it is such injury as will be redressed to obtain from an owner, by a false representation of a fact which he deems material, property which he would not otherwise have parted with upon the terms which he is thus induced to accept. If this were not so a conveyance obtained by any other fraud than such as was practiced in this case, could be upheld by proof that the grantor was in no worse condition than if he had not made it. Something of this kind was set up in Levick v. Brotherline, 74 Pa. 149, in supposed justification of the procurement of a conveyance by husband and wife of the wife's land, by falsely representing that the name of a person to whom the wife alone had previously attempted to convey was inserted as the grantee, and that the deed was intended merely to perfect his title. It was said in that case that, although a substantial money consideration was paid as an inducement to the execution of the deed, if the grantors relied upon the false representations, and would not have executed it if they had known that the name of the actual grantee was inserted therein, it was as fraudulently procured as if it had been obtained for a nominal consideration; and it was brushed aside as so much waste paper. It was upon the same principle that the sale of a horse procured to be made by a fraudulent contrivance was avoided in Harner v. Fisher, 58 Pa. 453, although the seller was tendered, after delivery of the horse and upon the day payment of the contract price was agreed to be made, what would have been adjudged the legal equivalent of that price if the transaction had been honest upon the part of the purchaser.

The appellants, seeking to hold on to the advantage which they supposed they had gained after they had been informed by the plaintiff's bill of the fraud practiced by their agent, make the conduct of that agent their own, if they had neither authorized nor assented to it before; and by their defence have made the accumulation of costs necessary. If they had promptly disavowed the fraud and consented to a decree against Kreuger they might, with propriety, have asked that the costs be imposed upon him, and that they have leave to remove any improvements which they had put upon the property in the belief that their title was untainted. But such is

not their case. With respect to the improvements they stand upon no higher ground than does a trespasser, and the costs are principally of their own making.

The decree of the court below is affirmed.