## Zettlemoyer et ux. *v.* Bloch et al., Appellants.

Argued January 24, 1938.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Harry E. Sprogell,* with him *Emanuel Weiss* and
*Saul, Ewing, Remick & Saul,* for appellants.

*Harvey F. Heinly,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, March 21, 1938:
One cannot read this record without becoming con-
vinced that Lucien Bloch practiced chicanery upon
plaintiffs.   Whether under established principles they
can correct the wrong he did them is the problem to be
solved.   The bill in equity brought by plaintiffs seeks
to have reassigned to them by Joseph Bloch and Son, a
partnership of which Lucien Bloch is a member, a bond
and mortgage executed by Samuel W. Reinhard and
wife to plaintiffs, which the latter had transferred to
Bloch and Son, and to compel them to cancel a bond
and mortgage which had been given by plaintiffs to
them, the bill proffering to reconvey to Bloch and Son
certain lots they had conveyed to plaintiffs.   The court
below granted the relief prayed for and defendants ap-
peal.

The moving spirit in the transaction was Lucien Bloch.* He learned through a relative of plaintiffs that they possessed some mortgages which were in default. He did not know plaintiffs. He went from his home in Reading to theirs in Emaus, Lehigh County, and by representations which he made, induced them to assign mortgages they owned, of the face value of $6,400, to him, in exchange for five unimproved lots in Bern Township, Berks County, whose value he represented as being in excess of the amount of the mortgages, but which it was testified on the trial were not worth over $500. Having secured the mortgages, Bloch threatened one of the mortgagors with foreclosure, which so disturbed plaintiffs they had him reassign this mortgage to them, and, in lieu of it, executed a mortgage to him for the amount of it, $3,300, covering their home.

The chancellor thus described the happenings which brought about the exchange: "A consideration of the sequence of events here shows a high-pressure salesman swooping down upon two retiring and unsophisticated folk and by dangling promises of easy gains before their eyes charming them into prompt and unresisting compliance with his wishes. Unknown to them as he was, he called at their home unannounced and without an introduction by any mutual friend, and within about 48 hours had possessed himself of two of their mortgages upon improved real estate in exchange for title to five unimproved so-called 'building lots.'" Even so, plaintiffs cannot escape from the bad bargain which they made, unless, by evidence, they have brought themselves within the principles of law which invalidate a transaction such as this because of fraudulent representations.

The strongest and most tempting lure which Bloch held out to plaintiffs was his statement that a concrete

---

* See *Isaac v. Davis,* 327 Pa. 401, 194 A. 401, in which another transaction by Bloch was before us.

state highway would be built to the lots, which would make the lots more valuable. He showed the road on a plan he exhibited to them. From our reading of the testimony we are convinced that he knew, from what he had learned from officials of the state highway department, his representation was false. On the witness stand he denied making the representation, but the court below found as a fact he did, saying: "In agreeing to purchase the lots in question and in purchasing them the plaintiffs relied upon the representations made to them by defendant Bloch to the effect that a concrete state highway would be constructed close to the lots conveyed to them."

This was such a false representation as tinctured the contract resulting from it with fraud. The case in principle is ruled by *Williams v. Kerr,* 152 Pa. 560, 25 A. 618, in which we decided that a decree for a reconveyance of land will be made, where it appears that the owners of the land were induced to sell it by a false representation of the vendee that a foundry and machine shop would be immediately erected upon the property which would greatly enhance the value of the vendor's remaining land; and by *Sutton v. Morgan,* 158 Pa. 204, 27 A. 894, where we rescinded a sale of land where it appeared that the vendee was induced to purchase at twice its value by false representations of the vendor's agents to the effect that there was a large demand for building lots on the land, that a railroad company was about to move its shops to the neighborhood, that a syndicate of prominent capitalists had been formed to secure the land, and that a certain large sum had been offered for it. See also *Standard Elevator Co. v. Wilson,* 218 Pa. 280, 67 A. 463.

Decree affirmed at appellants' cost.