19 N.J. Super. 387 (1952)
88 A.2d 690
IN THE MATTER OF THE ESTATE OF ELIZABETH DUNCAN REED, DECEASED.
Superior Court of New Jersey, Hudson County Court Probate Division.
Decided May 2, 1952.
*388 Mr. Harry Kalat, co-executor, pro se.
Mr. William N. Johnson, attorney for Benjamin Reed, guardian ad litem of Benjamin Reed, Jr. (Mr. Milton Leibowitz, of counsel).
Mr. Louis P. Brenner (Mr. Joseph G. Liebman, appearing), attorney for Leonia Duncan Wright, co-executrix.
DREWEN, J.C.C.
The question is whether, by the terms of N.J.S. 3A:3-10, the will of decedent is rendered invalid. The issue, raised by a co-executor, is occasioned by apprehension *389 that arises from the decision of our former Court of Errors and Appeals in Kanzler v. Smith, 123 N.J. Eq. 602 (1938). As to the right of an executor to contest a will, see In re Babcock, 112 N.J. Eq. 374 (E. & A. 1932) and Green v. Blackwell, 32 N.J. Eq. 768 (E. & A. 1880).
The will was executed June 7, 1948. Thereafter, on January 5, 1951, by decree of this court, testatrix formally adopted Benjamin Reed, Jr., the infant beneficiary named in the will. Throughout the period that includes all events relevant to the inquiry testatrix was unmarried, a prior marriage having been dissolved by divorce; and she was without issue. She died January 17, 1952, leaving her surviving, among others, the aforementioned son by adoption. The statute reads:
"A will made when a testator had no issue living wherein any issue he might have is not provided for or mentioned, shall be void and the testator be deemed to die intestate if, at his death, he leave a child or issue or leave his wife enceinte of a child which shall be born." (N.J.S. 3A:3-10.)
It appears to be clear in New Jersey that the leaving of an after-adopted child is within the intent and meaning of the statutory condition: "if, at his death, he leave a child or issue." In re Book, 90 N.J. Eq. 549 (E. & A. 1919), reversed In re Book, 89 N.J. Eq. 509 (Prerog. 1918); In re Alter, 92 N.J. Eq. 415 (Prerog. 1921). The present statute is a re-enactment of R.S. 3:2-15. In the Book case it is the view of the Court of Errors and Appeals that the Wills Act and the statutes of descent and distribution must be construed in pari materia with the Adoption Act, and the court declares:
"* * * the legislative intent to be gathered from a reading of all these statutes was to vest in adopted children all the rights and privileges which by the act concerning wills, the statute of descents, and the statute of distribution had been conferred upon children born in wedlock; that is to say, to place them in the same position as if they had been natural born children of the decedent, so far as those statutes are concerned  to substitute the lawful children of the decedent, no matter what the source of their origin, in the place of those *390 born of his body. To give this legislative purpose its full significance, the meaning of the words `child,' `children,' and `issue,' whenever appearing in the various statutes comprising the legislative system embodied therein, when used with relation to the testator or intestate, must be considered to have been enlarged so as to include adopted as well as natural born children within their scope."
The question here submitted has been decided in other jurisdictions (cases infra), but never in this State. It was before the court in the recent case of Guarantee Bank and Trust Company v. Gillies, 8 N.J. 88 (1951), but its determination was found to be unnecessary.
It must be postulated on the authority cited that for all the purposes of this decision the law's equation of adoption and birth is absolute; from which it follows that the equation must be applied fully to the statute and in all its details. Making the two things equal has connotations that are not to be avoided, and which must be followed through. True, Benjamin Reed, Jr., is "provided for" in the will and, of course, he is "mentioned." But is he "provided for or mentioned" as "issue," that is in the interpretive sense? It is plain to me that he is not; and to require anything less than that would be, in a case like this, to pervert the meaning and application of the statute.
In the first place, when we think of a testator's providing for or mentioning future "issue" there is in mind the prospect of the parent and child relation, in the natural sense, and nothing else. And it goes without saying that the prospect is entirely uncomplicated by the possibility of any other relation affecting the persons involved prior to the event whose contemplation is in question. It is entirely different when the dispute concerns not a future birth but a future adoption. In the latter case the nature of the filiation is such that if and when the prospect of it does occur, it may, and usually does, concern one already in being, and toward whom the testator might well have, as testatrix in the present instance did have, feelings of attachment already expressed in a provision for testamentary benefit. Now, when such provision is plainly and completely uninfluenced *391 by any prospect in testator's mind of an adoptive parent and child relation, it certainly cannot be taken as a reference "to any issue he might have." To state the question is to answer it.
Here, as I see it, the will puts it beyond doubt that adoption of the boy was not only not contemplated, but it contains nothing that gives us the least reason to suppose that testatrix thought of adoption as even possible, there also being much to show that she assumed it to be not possible. The will makes reference to "the boy whom I have raised," and it sets up a trust on terms that authorize the trustee to expend for his maintenance the sum of $20 monthly until the fund "is fully exhausted, and in the event there will be any balance left upon his attaining the age of twenty-one years, then the balance shall be paid to him." But the taking effect of the trust is sharply contingent, the contingency being the granting of permission by the boy's mother that his name be legally changed, and that the sister of testatrix be appointed his legal guardian, and that the boy "be raised by her (the sister) at such place as she shall decide to live and maintain her residence." Should this permission not be given the trust is to lapse, "and the boy shall be taken care of by his mother."
There is nothing in this to show that the boy is thought of as a son, in any status, present or prospective. It is manifest that he was not so thought of. The fact that he had been raised by testatrix makes it all the more significant that the continuance of benefits after her death is made to depend upon decisions which, as she recognized, only the mother could make. Testatrix is restrained in her befriending by conditions that it was not within her right to control; and it would be unreasonable to assume that she would not have gone further to discharge the full maternal obligation, had that obligation been hers. At any rate, we must conclude that taking the testamentary provision at its utmost, it is not made for the boy as "issue," nor as having the only other status that is legally equivalent thereto. This is demonstrated *392 by the fact alone that testatrix felt free to cast the boy back upon his mother, and to do so upon her own terms. For all that she knew or could foresee when the will was made, the boy's return to his mother was the event that awaited him.
The few decisions that there are in other jurisdictions present, I think, a clear preponderance, and with which the instant result is in accord. In Bowdlear v. Bowdlear, 112 Mass. 184 (Sup. Jud. Ct. 1873), the will was held to have been unaffected by the subsequent adoption. The reason given is that the court found the provision adequate, in the sense that, inferentially at least, it was all that testator intended; and a conscious discharge of the parental obligation was found to be present in the circumstance that "the love for her (expressed in the will) was the reason for the provision in her favor as well as for her adoption as a child." But the decision, I submit, bears evidence that it was not thoroughly reasoned. In one respect, at least  assuming a statute similar to our own  it would appear to rest upon a fallacy. To say that the testator must be presumed to have intended the particular testation expressed in his will because he lived 11 years after the adoption without changing the will, is to make it optional with him to remove or not remove the inequity proclaimed in the statute, and which it is the design of the statute to deal with absolutely and in its own way. The real question is evaded. The Appellate Division of the New York Supreme Court in the case of In re Guilmartin's Estate, 250 App. Div. 762, 293 N.Y.S. 665 (1936), affirmed 277 N.Y. 689, 14 N.E.2d 627 (Ct. App. 1938), says of the Bowdlear decision: "The development of the law in respect to adoption by statute and by the trend of judicial decision inclines us to take a contrary view to that of the Massachusetts court in 1873."
There is, I think, in the Bowdlear opinion a further negative value. It points to what in my judgment is a decisional pitfall in the problem. The condition prescribed in the language: "wherein any issue he might have is not provided *393 for" can be tested for its presence here by nothing but the prospective status which the testament ascribes to the one provided for, that is whether as "issue" (in the interpretive sense) or not. Definitely the test cannot be made either by the extent of the providing, nor by that in combination with the aforesaid test of status, save only as status, independently ascertained, may be seen to be corroborated by the measure of testator's bounty. The problem is not to tell what testator meant to give, but to whom he meant to give it. And so it is that as the search for significance departs from the primary concern of status, by so much does it depart from the statute. Aside from its irrelevance, the falsity of the quantitative test is exposed by the truism that generosity is as congruous with the prospect of filiation as with the absence of it. Certainly generosity is not necessarily conditioned upon it and is common enough without it. Circumstances are the variegating force. On the other hand, a testator might give to his clearly designated "issue" what could well be regarded as clearly less than adequate, and yet have fully intended to give no more. Again, it all depends upon the circumstances, and of these testator must remain the judge. The thing that serves as polestar here is the true standard of relevance, and the failure to follow it explains, in my judgment, the failure of adherence to the issue in the Bowdlear decision  again assuming, of course, a statute in that case comparable to our own.
In the Guilmartin case (supra) the will was held invalid and the New York Court of Appeals affirmed without opinion. The Appellate Division observed in that case:
"The provision in the will for her benefit is in the status of `my friend' and the record is devoid of any intimation that the testatrix contemplated a change to the infinitely closer relationship of daughter until several years had elapsed after the drawing of the testamentary instrument."
A result like that in the Guilmartin case, grounded in similar reasoning, and under a statute in every way comparable *394 with our own, was reached in the Connecticut case of Fulton Trust Company v. Trowbridge, 126 Conn. 369, 11 A.2d 393, 127 A.L.R. 747 (Sup. Ct. Err. 1940). The case of In re Kelly's Estate, 44 N.Y.S.2d 438, 182 Misc. 481 (Surr. Ct. 1943) upheld the will on the ground that its references to "my son Richard Kelly * * * clearly indicate that the change in status which subsequently occurred was clearly in the mind of the testator at the time of the execution of the will." Care is taken to distinguish these facts from those in the contrary cases, supra, and the court says (44 N.Y.S.2d p. 440):
"Although the will contained substantial provisions for the benefit of said child, it has been held that the amount of the benefit is immaterial since it does not follow that such benefits would not have been greater if the will had been drawn with the changed status in mind,"
citing Matter of Mosher's Estate, 143 Misc. 149, 256 N.Y.S. 235 (Surr. Ct. 1932), and In re Guilmartin, supra.
The case of Mares v. Martinez, 54 N.M. 1, 212 P.2d 772 (Sup. Ct. N.M. 1949), in which the will was upheld, is clearly distinguishable. The facts are widely different. In that case there was an "alleged agreement to adopt" but no adoption proceedings had ever taken place. Then, too, there are uncertainties in the case that are important. One of the questions which the court was apparently unable to resolve was that of testator's opinion as to whether the child had been adopted or not. Moreover, it is fairly open to inference, assuming an adoption, that it had occurred before the will was made.
There are two additional points urged against invalidation of the present will. One is that because residence of the parties to the adoption proceedings was not what the statute requires, this court had no jurisdiction to make the adoption decree. The statute reads (R.S. 9:3-1): "Any unmarried person of full age * * * may petition the orphans' court of the county wherein the petitioner or any *395 minor child may reside for permission to adopt such child and change the name of such child * * *." The argument is, on the theory that adoption proceedings are in rem, that the child (though admittedly residing at the time with his foster-mother in Jersey City) must be regarded as then resident in Essex County because his natural mother resided there. Even conceding the proposition to be sound, there are two facts that remain. One is the statutory provision that the residence element of jurisdiction is present when either the petitioner or the child resides within the court's jurisdiction. The other is not only that the child, as already stated, resided at the home of the foster-mother, but that he did so with the consent of the natural mother, his residence there being a condition precedent to the adoption, to which the natural mother likewise consented. (R.S. 9:3-5.)
The argument against jurisdiction also contains the proposition that in the residence requirement affecting the petitioner or the child the disjunctive or must be construed as and. Even so, it was perforce complied with. Moreover, the cases in which the urged construction has prevailed are so foreign to anything in the situation before us that on that score alone no attention to the point is warranted.
The remaining contention charges that public policy is transgressed by the provision of the statute that allows adoption by unmarried persons. In the brief it is urged that because of the abolition of common-law marriages in New Jersey it must be held that "* * * this state does not generally approve the begetting of children without the benefit of clergy." There is much confusion here and it will be of no help to discuss it. But regardless of that, it is not amiss to say that the law of adoption is a sociological institute, chaste and benevolent in spirit, designed for the creation of non-puerperal parenthood, and for the laying of all its cares upon devoted volunteers, who are found to be qualified, and who are eager for the burden.
Finally, it must be remembered, we are dealing here with a simple statute, one peremptory in character and operating *396 by fiat. It marks a legislative policy not confined to our own State. We cannot be concerned that in concrete instances it might work to seemingly more or less untoward ends. Given a situation whose undoing the statute is designed to accomplish, the method of undoing must be applied, and the only method is that which the statute affords.
For the reasons set forth the judgment of probate is set aside and the will declared invalid.