## Rose *v.* Rose, Appellant.

428

Argued April 30, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Raymond Pearlstine,* with him *Thomas M. Garrity* and *Wisler, Pearlstine, Talone & Gerber,* for appellants.

*C. Brewster Rhoads,* with him *Harry C. Schaub, Sidney L. Wickenhaver* and *Montgomery, McCracken, Walker & Rhoads,* for appellants.

*Albert S. Oliensis,* with him *William H. S. Wells, Walter Biddle Saul, Paul A. Davis, IV, Smillie, Bean, Scirica & Davis, Levy & Oliensis,* and *Saul, Ewing, Remick & Saul,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, June 25, 1956:

In this action brought under the Uniform Declaratory Judgments Act of 1923, P. L. 840, as amended, 12 PS §831 et seq., and tried by the court below without a jury,[1] defendants appeal from judgment entered for plaintiff by the court en banc.

Involved is the validity and effect of a written instrument executed solely by plaintiff, wherein he agreed to set over and bequeath at his death all of his stock in Best Markets, a large food chain, one-half to his only son, the defendant, Bernard Rose, and one-half to his son's children; not to sell or alienate the stock prior to his death; and agreed "to be legally bound by the terms of this instrument in accordance with the Uniform Written Obligations Act."

Plaintiff is president of the food chain, a highly successful enterprise which had its origin in a neighborhood store owned by him. Through his efforts, and those of his wife and son, the business prospered and grew into the present chain of stores. In the course of its growth, defendant-son was given stock in the corporation, and became the active manager thereof. Throughout there appears to have been considerable conflict between plaintiff and his son, but not of a nature to create legal difficulties until the events leading to the execution of the instrument in question; even though over a period of some 14 years the son had sought to have plaintiff relinquish control of the corporation with the avowed purpose of keeping it in the family.

Plaintiff's first wife, and mother of defendant-son, died on May 2, 1951. Plaintiff apparently became lonely and began paying attention to the former wife of

---

[1] Jury trial was waived by the parties, under the Act of 1935, P. L. 228, 12 PS §852.

his nephew, whom he subsequently married. In the first week of July, 1951, the son learned that plaintiff contemplated immediate marriage and expressed his displeasure. Through Arthur Dennis, Esq., the attorney for the corporation (who also represented the son), it was arranged that a meeting be had in plaintiff's home on July 10, 1951, at which the intended wife would be present, and at which time the plaintiff would execute an instrument or instruments to assure the wishes of his son as to the stock in the company. The attorney prepared an agreement placing the stock in trust for the son's children and retaining control in himself until his death. This was never executed.

The attorney arrived early for the meeting, and having shown the trust agreement to plaintiff, was ordered to leave because of plaintiff's dissatisfaction with what had been provided. Shortly thereafter the son and his family arrived with the vice-president of the company. Learning of the treatment given the attorney, they engaged in argument with plaintiff and then departed. On the same evening plaintiff called defendant-son, who agreed to resume negotiations. Plaintiff also requested the attorney to prepare an agreement to assure the son's wishes and to keep peace and harmony in the family. Thereupon, they returned to plaintiff's home where after considerable discussion the attorney dictated and plaintiff's intended wife typed the instrument in question. Also prepared, and signed by the present Mrs. Rose, was a pre-nuptial agreement disclaming any rights in the stock.

There was no valuable consideration passing to the plaintiff; and he alleged, as the court below found, that the inducement therefor was the false representations of defendant-son that by doing so peace and harmony within the family would be restored. This is based on assertions by the attorney, made in the son's

presence during the discussion in which he and the others engaged, such as: "If that is going to satisfy them, if that is going to make happiness in the family for Heaven's sake do it"; "Stop worrying about it. Just put your name down, and everything will be all right, everybody will be peaceful." According to plaintiff, after the instrument was signed, "everybody seemed to be happy. *Everybody promised each other* good will and happiness to be, and stated it was going to be all right." (Italics supplied). Further, in the course of discussion, it was made clear that one of the considerations for execution of the instrument was the son's acceptance of the father's intended wife as a member of the family. His subsequent conduct established that he had no intention to so accept her. The findings of the court are fully supported by the evidence.

Plaintiff was married the following day and left for a honeymoon trip of a month's duration. In the meantime, the son succeeded in having the stock of the corporation exchanged and sold, so that he thereby obtained full control. This gave rise, upon plaintiff's return from his honeymoon, to an acton whereby plaintiff succeeded on November 29, 1951, in having the parties restored to their prior positions.

The parties continued to have considerable controversy, with the son being guilty of most reprehensible conduct towards plaintiff, both in public and in private. Finally, the son claimed that the plaintiff had no power to effectuate an intended exchange of plaintiff's stock for that of another large chain of stores. This assertion of the son prevented such exchange, and plaintiff thereupon instituted this action on June 22, 1953.

Plaintiff gave as basis for his petition that the agreement was void because (1) it was a restraint on alienation of property and not binding because with-

out actual consideration, (2) the restraint on alienation was unreasonable and against public policy; and he contended that the Uniform Written Obligations Act is not a substitute for consideration, but only a substitute for a seal, and that failure of actual consideration being proved, the agreement must fall.

The trial judge first found for defendants; but after argument on exceptions filed by plaintiff, the court en banc entered judgment for plaintiff, making a finding that defendant-son had taken unfair advantage of plaintiff in that he never intended, at the time of the agreement, to keep harmony in the family. It arrived at this conclusion by reviewing the number of requests and attempts in prior years by the son to obtain control of the corporation; finding that the son, and the attorney in the son's presence, had declared that execution of the instrument would restore family peace and harmony, and that by his subsequent actions the son had established that he never intended to bring about such harmony.

We have held that a promise to dispose of one's property to a particular person or in a particular manner is not in itself an unreasonable restraint on alienation: *Gredler Estate,* 361 Pa. 384, 387, 65 A. 2d 404. In addition, if an instrument contained a statement as provided in the Uniform Written Obligations Act of May 13, 1927, P.L. 985, 33 PS §6,[2] the rights and duties thereby granted are valid and enforceable even though no consideration passes: *Rekas v. Dopkavich,* 362 Pa. 292, 298, 66 A. 2d 230; *Savitsky v. Parulis,* 378 Pa. 140, 143, 144, 106 A. 2d 580. But mere

---

[2] "A written . . . promise . . . shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement . . . that the signer intends to be legally bound."

satisfaction of these principles will not save the contract if fraud of the promisee has induced its execution by the promisor.

A consideration of the testimony leaves no question or doubt that plaintiff was induced to execute this instrument by the son's *promise* that peace and harmony would thus be restored. That is, that he would thereafter so conduct himself that they would not be in continual controversy. It is the only natural meaning to be derived from the words expressed to plaintiff. He sought out the plaintiff, arranged for the meeting, was present at all times during the conversation, and accepted the instrument on the basis of the assurance to the plaintiff that they would have no more difficulties. If the defendant-son himself had uttered the words ascribed to the attorney, no one could doubt that he made the promise attributed to him. Defendant-son acknowledges to his presence during the meeting and discussions, and even though he believed in his assertions that he "remained mute," still it must be held that he ratified, or adopted, the attorney's acts as his own. It was his duty to repudiate them immediately if the attorney had exceeded his authority. Cf. *Yarnall v. Yorkshire Worsted Mills,* 370 Pa. 93, 96, 87 A. 2d 192; Restatement, Agency, §94.

Restatement, Contracts, §473, provides: "A contractual promise made with the undisclosed intention of not performing it is fraud." This principle has been applied by us in *Zettlemoyer v. Bloch,* 329 Pa. 205, 198 A. 80; *DeBernard v. DeBernard,* 384 Pa. 194, 120 A. 2d 176.

It takes only a brief review of the son's actions to convince that he showed bad faith or fraud. His conduct was atrocious. As indicated, his father had no sooner left on his honeymoon than the son wrongfully changed the stock structure in order to give himself

full control of the corporation; and persisted in maligning the plaintiff, and in otherwise creating constant turmoil. Harmony failed solely because of the son's actions. As we said in *DeBernard v. DeBernard,* supra, at page 197, so here: "It was solely in reliance upon the truth of all of this [his promises] that plaintiff made the [instrument] . . . This was not merely a breach of an oral promise or agreement . . . but a deliberate fraud practiced upon [plaintiff] . . . It is a fair inference from the facts and circumstances surrounding the [execution of the instruments] . . . and his subsequnt conduct that he never intended to do what he stated he would. This was fraud." If the conclusion that at the time of execution of the instrument defendant-son had no intention to carry out his promise is a finding of fact by the court below, it is sustained by the testimony; and if solely an inference from the testimony, such inference is adopted by this Court.

Nor can the grandchildren force compliance with the agreement. It is true that they had no part in the matters leading to its execution. But we have held: " 'The foundation of any right the third person may have, whether he is a done beneficiary or a creditor of the promise, is the promisor's contract. Unless there is a valid contract, no rights can arise in favor of anyone . . . Broadly speaking, not only must any formal requirements be complied with, but the beneficiary also takes subject to the due performance of all express and implied conditions affecting the promise in which he is interested' ". See *Williams v. Paxson Coal Co.,* 346 Pa. 468, 471, 31 A. 2d 69. See also Restatement, Contracts, §140.

Nor can it be said that the plaintiff is guilty of laches. Under all of the circumstances of the case, it is reasonable that the plaintiff allowed things to remain as they were until he determined the actual state

of facts, which only then clearly showed that the son had obtained the execution of the instrument with only the thought in mind of controlling the corporation, and with no expectation of creating the harmony which formed the consideration for the instrument.

The acts of the plaintiff were only reasonable under the circumstances, and he cannot be charged with undue delay.

Judgment affirmed; costs to be paid by appellant, Bernard Z. Rose.