## Gordon Adoption

*Michael Halliday,* for petitioner,

ACKER, J., May 20, 1971.—This opinion is concerned with the issue of whether Pearl E. Adams, a married woman, without the joinder of her husband, shall be permitted to adopt Paul A. Gordon, one year of age.

Testimony was taken on April 16, 1971, from Betty Mae Gordon, the natural mother, and Mrs. Pearl E. Adams, the prospective adopting mother. The following findings of fact are concluded.

## FINDINGS OF FACT

1. On March 16, 1970, Betty Mae Gordon, age 19, delivered a male child, Paul Arnold Gordon.

2. The natural mother is not related by blood to the prospective adopting mother, although there is an extremely remote relationship by marriage.

3. The natural mother lived with the prospective adopting mother the last four months of her pregnancy.

4. The natural mother is a 1969 graduate of Meadville Senior High School and has worked mostly at babysitting jobs since her graduation.

5. The natural father of the child is married and has never assumed any responsibilities concerning the child, nor has he ever been prosecuted for support or maintenance.

6. The prospective adopting mother secured custody of the child in her home on March 19, 1970, three days after the birth of the child, and has had the child consistently thereafter.

7. The prospective adopting mother is 46 years of age and works two days per week as a bookkeeper and has had no other children.

8. The prospective adopting mother was married late in life but her husband abandoned her on July 3, 1960, and she has not heard from him since that date, nor has she filed for or attempted to secure a divorce.

9. The prospective adopting mother has an income of $125 a week gross and $100 a week net and pays a babysitter $1 a day to care for the child. The babysitter is a member of her church.

10. The prospective adopting mother is a hardworking, well-respected member of her church and community and has a deep and intense love and affection for the child she proposes to adopt.

The basic concern of petitioner appeared to be whether this court would consent to an adoption by an unmarried person. A reading of the "Adoption Act"[1] fails to disclose any restriction upon an adoption by a single person.

"Adoption was not a common law act; it depends altogether on the statute, and, in this state, may be defined as taking the child of another in the manner provided by, and with the consequences specified in, the statute. Being in derogation of the common law, it has been strictly construed in order to carry out the legislative intent . . . ": Fisher v. Robison, 329 Pa. 205, 308, 190 Atl.81 (1938).

The authorities recognize that "Unless the statute prohibits, either spouse may adopt separately, and the nonjoining spouse assumes no duties or obligations."[2] Cases where an adoption by a single person have been permitted are: In Re: Reed's Estate, 19 N.J. Superior Ct. 387, 88 A. 2d 690 (1952), where a divorced woman was permitted to adopt another person's child; Petition of Curran, 49 N. E. 2d 432 (1943), Massachusetts, where an unmarried woman of full age was permitted to adopt her own natural child born out of wedlock; In re Joyce's Estate, 183 A. 2d 531 (1962), where the right of a father to adopt his illegitimate son was recognized;

[1] Act of July 24, 1970, P. L. 620, art. I, sec. 101, et seq., 1 PS §101.

[2] 2 CJS Adoption of Children, sec. 9b, p. 379.

Lavell v. Adoption Institute, 8 Cal. Reptr. 367 (1960), where the fact that a father is unmarried cannot deprive him of the right to adopt a child born out of wedlock.

The obstruction to this adoption is not that advanced by petitioner. Rather, it is the continued marriage of petitioner, even though her husband may have deserted her. The Adoption Act of 1970[3] provides:

"Except as otherwise provided in this act, consent to an adoption shall be required of the following: . . . (2) The adopting parent's spouse, unless they join in the adoption petition."

The language of the previous statute upon adoption in Pennsylvania was almost identical.[4] In that the express language of the statute requires the joinder or consent of the other spouse and in that the statute must be rigidly construed, it being derogation of the common law, the husband must either join in this petition as a petitioner or give his consent as long as the parties are lawfully married to each other.

In re Reed's Estate, supra, at page 694, the court dismissed the contention that public policy is transgressed by a provision of the New Jersey statute allowing adoption by unmarried persons. There it said, page 694, ". . . it is not amiss to say that the law of adoption is a sociological institute, chaste and benevolent in spirit, designed for the creation of non-puerperal parenthood, and for the laying of all its cares upon devoted volunteers, who are found to be qualified, and who are eager for the burden."

Petitioner in this case meets those requirements but has the lodestone of a spouse preventing this adoption. She has not seen, nor heard of this spouse since 1960.

---

[3] Act of June 24, 1970, P. L. 620, art. IV, sec. 411, 1 PS §411.

[4] Act of June 30, 1947, P. L. 1180, sec. 2, 1 PS §2.

That does not, however, prevent the spouse from returning to the homestead at anytime to be confronted with a baby boy who is now more a part of the household than he probably ever was himself. This could well be an effective deterrent to any realistic possibility of re-union of the spouses and is in all probability the reason that the legislature in its discretion has continued the provision of the adoption statute requiring that the spouse join in or consent to the adoption. This section of the statute cannot be circumvented.

Hence, the adoption in this case is denied.

### ORDER

And now, May 20, 1971, the petition of Pearl E. Adams to adopt Paul Arnold Gordon is denied.