## Schwartz et al., Appellants, *v.* McCloskey.

*Sale—Rescission—Execution—Trespass—Sheriff.*

A vendor of goods who claims to have rescinded the sale on the ground of fraud, cannot maintain trespass against the sheriff for the wrongful

seizure and sale of the goods as the property of the vendee, where the debt of the plaintiff in the execution was contracted after the alleged voidable sale.

*Rescission of sale—Return of purchase money.*

The rule that the vendor of goods, claiming to rescind the sale on the ground of fraud, must tender back any part of the purchase money received by him, as a condition of the reclamation of the goods, applies even when the goods are in the hands of the sheriff at the time the rescission is claimed.

Argued April 30, 1893.   Appeal, No. 321, Jan. T., 1893, by plaintiffs, Charles W. Schwartz and Albert Groff trading as Schwartz & Groff, from judgment of C. P. Clearfield Co., Dec. T., 1891, No. 135, on verdict for defendant, Edgar L. Mc-Closkey, sheriff.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Trespass against sheriff for unlawful sale.

The facts appear by the opinion of the Supreme Court.

The court, KREBS, P. J., entered a compulsory nonsuit, and subsequently refused to take it off.

*Error assigned* was (2) refusal to take off nonsuit.

*J. B. McEnally, D. W. McCurdy* with him, for appellants.— Material misrepresentations will be presumed to have induced the sale.   On proof that representations were material and false, the burden will be thrown on the party making them to show that they were not relied on by the other party : 1 Benj. on Sales, 6th Am. ed. § 637, n. 3 ; 1 Whart. Cont. § 242 ; 8 A. & E. Enc. L. 794.

When one acquires property after levy and before sale, he can maintain an action of trespass against the sheriff for selling his property as that of another : Kitchen v. McCloskey, 150 Pa. 376 ; Whitman v. Merrill, 125 Mass. 127.

The right of rescission by a vendor on the ground of fraud will prevail against all persons except a bona fide purchaser for value without notice : Levy v. Cooke, 143 Pa. 607 ; Neff v. Landis, 110 Pa. 204 ; 1 Whart. Cont. § 291 ; 2 A. & E. Enc. L. 444 and note.

A demand on the vendee for goods he has received, or a

tender to him with a view of his joining in the rescission, would be useless after he had allowed the goods received by him to pass beyond his control, and thereby make compliance on his part impossible : Beetem v. Burkholder, 69 Pa. 254 ; Benj. Sales, 6 Am. ed. §§ 606, 659, 660 ; Stevens v. Austin, 1 Metc. 557 ; Levy v. Cooke, 143 Pa. 607 ; Mortland v. Mortland, 151 Pa. 593 ; Manning v. Albee, 93 Mass. 520 ; Montgomery v. Pickering, 116 Mass. 227 ; 1 Whart. Cont. § 235.

The right to tender may be waived and then it is not necessary : Roth v. Crissy, 30 Pa. 145.

*A. L. Cole, James H. Kelley* with him, for appellee.—To sustain an action to recover back purchase money on the ground of fraud, there must be an actual rescission by the party defrauded, notice of it to the other party, and, unless the subject be entirely worthless, an offer to return it, so as to put the vendor in statu quo : Morrow v. Rees, 69 Pa. 368 ; Beetem's Adm'rs v. Burkholder, 69 Pa. 249 ; Smith v. Smith, 21 Pa. 367 ; Pearsoll v. Chapin, 44 Pa. 9.

OPINION BY MR. JUSTICE DEAN, July 19, 1893 :

This is an action of trespass against the sheriff of Clearfield county for selling on execution certain goods as the property of Louis Shaffer, which plaintiffs claim belonged to them.

Plaintiffs are merchants in Philadelphia. Shaffer was a retail dealer in Dubois, Clearfield county. In 1886 he and one Friedman had been in partnership in the mercantile business at Dubois. This partnership was dissolved about January 1, 1887, by the withdrawal of Friedman, and thereafter Shaffer carried on the business in his own name down to the 11th of November, 1889, when, on judgments confessed by him aggregating more than $7,000, his personal property, including the stock of goods on hand, was seized and sold by the sheriff. The largest judgment was to H. B. Claflin & Co. of New York for $3,683.23 ; there were four others to L. Friedman, his former partner, amounting altogether to $1,578.78 ; then four to Mary Shaffer, amounting to $2,000. The sheriff's sale realized about $6,500. Shaffer & Friedman had purchased goods on credit from plaintiffs while in business, and when they dissolved they owed a balance of $241.71, which had been standing for some

months; this was paid by Shaffer in July, 1887, and he continued to buy on credit; purchased bills in March, 1887, October, 1888, March, April, June and August, 1889. All these bills seem to have been paid except a small balance, when, on September 10, 1889, he called at plaintiff's place of business in Philadelphia, and purchased a bill amounting to $471.04, which was immediately shipped to and received by him. Of this bill, according to the testimony, there was on hand unsold by Shaffer at date of sheriff's levy, $423.84; the goods were identified and valued at the invoice price while in custody of sheriff after levy and before sale. The levy was made on the 13th of November, and possession taken by the sheriff; on November the 15th, plaintiffs in writing with schedule appended, notified the sheriff that the goods purchased from them by Shaffer on 10th of September, 1889, had been obtained by fraud, and that they still claimed them; on the same day they also notified Shaffer of their election to rescind the contract and reclaim the goods because of his alleged fraud, and at the same time returned to him two unpaid notes given on the purchase, but did not return or offer to return $100 in money he had paid.

The sheriff, disregarding the notice, proceeded with the sale and brought the proceeds into court for distribution. The plaintiffs then brought this action against him for damages. On the trial in the court below, plaintiffs offered evidence of alleged false representations made by Shaffer on the 10th of September, 1889, when the last bill was purchased.

Mr. Schwartz, one of the plaintiffs, testified as follows: " Q. What was the statement that you said he made there in 1889 in the presence of your credit man? A. The first questions were addressed to the matter of Friedman's withdrawal from the firm. He said Friedman had no means and had no money in the firm; that he had taken nothing out, and that he owed him nothing. He also said that the difficulties he had in meeting his liabilities promptly were due to Friedman's buying goods too liberally. He said he had no over-matured liability of any kind, and his financial condition was good; he was able to meet all his bills as they matured. That is substantially what he said."

He then testified that Shaffer gave four notes, all dated October 1, 1889, for this last bill; one at thirty days for $100;

one at sixty days for $125; one at ninety days for $150; and one at 120 days for $141.44. That the first one for $100 was paid when it became due, and the remaining three not due at date of levy were returned to Shaffer before the sale, but admits there was no return or offer to return the $100, or any part of it, paid on the first note.

Mr. A. R. Barret, the credit man of plaintiffs, testifies to the representations made by Shaffer at the time spoken of by Mr. Schwartz as follows: "Q. State what was said. A. Mr. Schwartz first asked him in relation to his copartnership and dissolution, and why it was dissolved. Shaffer answered that his partnership with Friedman had been dissolved because Friedman had been accustomed to buy too freely, and he accounted for his past or his previous slowness in paying his accounts upon that ground. He was then asked if Friedman had taken anything out of the concern, and he said, "no." He was then asked in regard to his liabilities, and he said he had no unmatured or past due liabilities,—and that he would be perfectly able to pay his bills in the future.

The plaintiffs followed this by offering judgments entered on warrants of attorney bearing date prior to September 10, 1889, amounting to about $4,000 in favor of L. Friedman and Mary Shaffer.

It was argued from this evidence, here were three false statements: (1) That he was not indebted to Friedman, the retiring partner. (2) That he had no overdue debts. (3) That he was able to pay all his debts as they matured. Assuming, as we must, where a compulsory nonsuit is entered, that the statements of plaintiff's witnesses are correct, Shaffer certainly did not tell the truth; the record shows he was indebted to Friedman; he owed debts then past due; in less than sixty days thereafter he was not able to pay his debts, and was in fact insolvent at the date of the purchase. If the issue had been between plaintiffs and Shaffer, it would have been a question for the jury to determine whether, in view of all the evidence, plaintiffs had been misled by "falsehood, artifice, or contrivance;" had parted with their goods on the faith of false representations. If, by false and fraudulent representations, Shaffer, under the form of a sale, got into his control and apparent absolute ownership their property, they had a right to

rescind the contract and reclaim it, on returning the notes and paying back or offering to pay back the money already paid: Benjamin on Sales, sec. 504; 8 A. & E. Enc. of Law, 801. But this is an action of trespass against the sheriff for a wrongful seizure and sale of plaintiff's property. Certainly, there was no trespass in seizing it; the legal title, voidable perhaps, but still the legal title, by a contract of purchase and sale had passed to Shaffer two months before; he was in the actual possession of the property under the contract; plaintiffs had confirmed the sale by accepting in part payment $100, fifty days after possession had been taken. The property by regular judgment and execution had passed into the custody of the law before even an attempt to rescind was made; it was the sheriff's duty to seize it, for at the date of the levy the title and possession were both in Shaffer.

If not a trespasser at the beginning, did he by the sale, after notice, become one? Leaving out of view the inquiry as to whether the evidence showed such " contrivance and fraud " as would warrant a rescission of the contract of sale on part of plaintiffs as between them and Shaffer, the question is whether as to this property, in the custody of the sheriff under a lawful seizure by virtue of execution on judgments regularly entered, the alleged rescission was effectual to revest title in the plaintiffs.

It has never been held in this state, that, as against an attachment or execution on a debt contracted subsequent to the alleged voidable sale, the vendor could rescind and reclaim the goods. On the contrary, in Smith v. Smith, Murphy & Co., 21 Pa. 367, the rule that he cannot do so is approvingly recognized, although the decision was rested on other grounds. Creditors whose debts are contracted subsequent to the possession by the vendee of goods under a voidable title, are treated as in the same situation with bona fide purchasers.

Plaintiffs concede here that, if Shaffer had sold these goods to his customers, they could not have followed and reclaimed them, because by their own act they had put in Shaffer a title known only to themslves to be voidable; purchasers had the right to assume, when they bought, that he was the absolute owner. So with creditors whose debts were contracted subsequent to his possession under this title. By plaintiff's act he was fur

nished with a basis for credit on which those who trusted him had a right to rely. For two months Shaffer had the exclusive possession of these goods as owner; while thus in possession, he pays nearly twenty-five per cent of the contract price ; plaintiffs, without objection or inquiry, accept it; then H. B. Claflin & Co., on a debt contracted, as appears by the record offered in evidence by plaintiffs, on 5th of November, 1889, two months after the purchase, enter judgment and issue execution. As to this debt, the attempted rescission was too late ; however effectual it might have been as to debts existing on September 10, 1889, it could not stay the execution on this judgment ; in making a sale upon this writ, the sheriff committed no trespass.

Further, the acceptance of the $100 by plaintiffs on November 4, 1889, in part payment of the bill, was in affirmance of the contract. This, it is said, was before they discovered Shaffer's statements were false. Let this be so ; even if their neglect to make inquiry for fifty days did not affect their right to rescind, because they had not yet discovered the fraud, still when they did discover it, a reclamation of the goods imposed upon them the duty of refunding the money over and above the value of the few already sold by Shaffer. Thereafter, their retention of Shaffer's money was a persistent affirmance of the contract. A party seeking a rescission cannot have both the property and the price ; cannot both affirm and disaffirm.

The case does not belong to that class of fraudulent contracts where property in the goods never passed to the wrongdoer; as in case of false personation, or a fraudulent refusal to perform conditions precedent to transfer. Both the property in and the possession of the chattels vested in Shaffer, and such was the intention of both parties to the contract; the price was to be paid by installments ; up to the time of the alleged rescission the purchaser had paid just as he agreed to pay. But then, before the other payments were due, at the time of the seizure of his goods, it was demonstrated he was not solvent as he had said he was, and he did owe creditors he had said he did not owe. Assume, on these facts, plaintiffs had a right to rescind and reclaim their goods, the nature of the transaction conferred on them no right to appropriate $100 of Shaffer's money, nor did it impose on him a forfeiture of that amount, or of that amount

less the value of the goods already sold; their right to be made whole does not also include a right, for their own profit, to impose a fine of $100, or any less sum, on Shaffer for lying.

But, it is argued, this rule can only have application where the suit is between the vendor and vendee; that plaintiffs ought not to have paid the money to the sheriff, for they had not received it from him; nor to Shaffer, for he had no longer control of the goods. This is to say in effect, plaintiffs could rescind for what they gave, but could not for what they got; could take back their goods, but could not give back Shaffer's money. We fail to see how a levy on the goods deprived Shaffer of the right to receive his money; this suit against the sheriff is not for a rescission; it is for trespass; to maintain it, plaintiffs must show that, as between them and Shaffer, they had rescinded before bringing it. They must prove they had sufficient grounds to rescind, and that, before reclaiming the goods, they did all that equity demanded; its first demand is, that one claiming to rescind a contract must restore or offer to restore the other party to his condition before it was made. True, it does not demand that which is impossible or unreasonable; but it was not impossible to tender Shaffer his money, for he was there in person. They did tender and he received the notes not yet due. The fact that the goods were in the custody of the law to be applied to payment of his debts did not make a tender to him unreasonable; the sheriff had nothing to do with the money; had no levy or claim upon it; it was Shaffer's, and he had a right to receive it. The title to the goods was still in him until the money was tendered to or received by him, and until the rescission was completed by repaying or offering to repay the money, the sheriff could not, without peril, relinquish the goods sought to be reclaimed. Therefore, in proceeding according to the command of his writ, he made sale not of plaintiff's property but of Shaffer's.

True, the debtor in the writ could not, by any act of his after the levy, loosen the grasp of the law, but the plaintiffs, by doing what was required of them, could have made void his title, and thus have constructed a foundation for this suit against the sheriff. The decision of this court in Kitchen v. McCloskey, 150 Pa. 376, is properly cited and relied on by appellants as establishing the right of the vendor to a rescission after levy and

before sale; but in that case the rescission was only consummated by the vendor repaying to the vendee the purchase money of the property levied upon; without such payment there would have been no rescission and the plaintiff would have failed in his action.

The judgment of the court below is affirmed, and appeal is dismissed at cost of appellants.