Stanley CULBRETH et al.

v.

Nina SIMONE et al.

Civ. A. No. 79–2829.

United States District Court,
E. D. Pennsylvania.

Jan. 15, 1981.

Allen L. Feingold, Philadelphia, Pa., for plaintiffs.

Jerome B. Fleischman, New York City, for defendants.

## MEMORANDUM AND ORDER

GILES, District Judge.

Relying on various legal theories, including fraud, plaintiffs claim that defendants breached a performing arts contract causing damages in excess of $50,000. Almost six years after the alleged breach of agreement, plaintiffs, a Pennsylvania corporation and two individual Pennsylvania residents, initiated this lawsuit against Nina Simone, a popular vocalist, her husband, Andrew Stroud, and her lawyer Maxwell T. Cohen, Esquire. All defendants are alleged to be New York citizens. However, service of process has been made only as to defendant Cohen.

Pursuant to Fed.R.Civ.Pro. 12(b)(1), 12(b)(2) and 12(b)(6), Cohen moves to dismiss the complaint and alternatively for summary judgment, alleging that the court lacks both *in personam* and subject matter jurisdiction, and that plaintiffs have not stated a claim upon which relief can be granted. Cohen also contends that the complaint should be stricken because it fails to allege fraud with the requisite specificity and, alternatively, that a more specific pleading should be required.

For the reasons that follow, the court holds that there is *in personam* and subject matter jurisdiction. However, Counts I, III and IV of the complaint shall be dismissed as to Cohen for failure to state a claim upon which relief can be granted. Count II shall not be dismissed because it does state a claim for common law fraud.

Plaintiffs allege that on August 2, 1973, the parties contracted with Cohen for his client, Nina Simone, to appear in concert at the Philadelphia Civic Center on August 16, 1973. Allegedly, to secure Simone's appearance, plaintiffs sent Cohen a money order in the amount of $3,797.55 made payable to him for the benefit of Simone. According to plaintiffs, Cohen negotiated all the details of the performance contract, which had several specific terms such as stage layout and sleeping accommodations for Simone, and personally guaranteed Simone's appearance (Culbreth Affidavit). For reasons not revealed in this record, Simone did not appear for the concert.

In addition to the breach of contract claim, plaintiffs assert that Cohen is liable because he defrauded plaintiffs by causing them to send him the money order when he knew at the time of contracting that Simone would not appear. Cohen vigorously denies these allegations. In two affidavits, filed in support of his motion to dismiss, he asserts that he neither had property in Pennsylvania nor contacts or business relations with persons in the Commonwealth. Cohen admits that he was Simone's personal attorney, responsible for the handling of a domestic relations matter and the review

of her personal tax returns with an accountant. He also admits that as an attorney he reviewed several of her professional and personal contracts. He denies ever being Simone's manager or booking agent claiming that a Eugene Harvey was her manager and that Simone negotiated her own contracts. He permitted Simone to use his address for receipt of mail because she traveled a great deal. He was authorized to deposit in her account checks received made payable to her order. Cohen claims he wrote to Simone on August 6, 1973, the day before he deposited the money order in question in her account, informing her that he intended to withdraw as her attorney effective the end of August, 1973. Cohen at some point did inform Simone of some calls he had received from a Philadelphia Assistant District Attorney informing him that one of the plaintiffs, Black Expo, Inc., was being investigated for fraud and inquiring as to Simone's relationship with the plaintiffs.

Plaintiffs have not alleged where or how the negotiations took place or how they ascertained that Cohen was the person to whom they spoke, assuming the communication was by telephone.

The court afforded the parties an evidentiary hearing on the jurisdictional issues and also heard arguments on Cohen's motion to dismiss and, alternatively, for summary judgment.

## ■ I. *In Personam Jurisdiction*

[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

*International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

In *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the United States Supreme Court reaffirmed the minimum contacts standard.

The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burden of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status of coequal sovereigns in a federal system.

444 U.S. at 291–292, 100 S.Ct. at 564.

Before a court can exercise *in personam* jurisdiction, it must be convinced that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567.

The relevant portion of the Pennsylvania Long Arm Statute, 42 Pa.C.S.A. § 5322(b) (Supp.1980), provides as follows:

(b) Exercise of full constitutional power over nonresidents. In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

Section 5322(a) of the Long Arm Statute also sets forth particular circumstances which may give rise to *in personam* jurisdiction.

(a) General rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business in this Commonwealth, for the purpose of this paragraph:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts . . .

(2) Contracting to supply services or things in this Commonwealth.

(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth . . .

■ While the Pennsylvania statute enumerates certain circumstances under which the exercise of *in personam* jurisdiction can be expected, this court must, in the final analysis, decide whether there are minimum contacts which satisfy the constitutional requirement of due process. It is settled that a plaintiff bears the burden of alleging facts sufficient to persuade the court that *in personam* jurisdiction exists and once jurisdiction is challenged, plaintiff must prove by a preponderance of the evidence facts establishing jurisdiction. As stated in *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936):

> [Plaintiff] must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justi-

fy his allegations by a preponderance of evidence.

*See also, Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980); *Kenyatta v. Kelley*, 430 F.Supp. 1328, 1330 (E.D.Pa.1977); *Hicks v. Kawasaki Heavy Industries*, 452 F.Supp. 130, 133 (M.D.Pa.1978).

■ The law favors resolution of disputes on the merits. Consequently, the court must read the pleadings in the light most favorable to plaintiff. *Empire Abrasive Equipment v. H. H. Watson, Inc.*, 567 F.2d 554, 557 (3d Cir. 1977); *VanNaarden v. Grassi*, 488 F.Supp. 720, 722 (E.D.Pa.1980); *Walsh v. National Seating Co., Inc.*, 411 F.Supp. 564, 567 (D.Mass.1976).

Plaintiffs allege that Cohen induced them to send a partial deposit for the concert performance, a money order for $3,797.55, payable to him for the benefit of Simone when Cohen knew that Simone had no intention of performing in Philadelphia. Further, plaintiffs claim that Cohen negotiated the details of the performance contract as Simone's agent and personally guaranteed that if plaintiffs sent the deposit, Simone would appear at the Civic Center. However, neither plaintiffs' complaint nor the evidentiary affidavits reveal which party initiated communications regarding the Simone concert or the place of any negotiations.

■ The court is persuaded nonetheless by a preponderance of the evidence that plaintiffs have alleged that a contract was contemplated to be performed in Pennsylvania within the meaning of 42 Pa.C.S.A. § 5322(a)(2) (Supp.1980). Such an undertaking would give the court *in personam* jurisdiction if the constitutional requirements are also met. 42 Pa.C.S.A. § 5322(b) (Supp.1980).

Cohen, on the other hand, alleges by affidavit that he knew nothing whatsoever of the alleged August 1973 contract, that he did not act as Simone's manager or booking agent regarding this or any other contract, and that his office address merely served as a mailing address for receipt of correspondence relating to some of Simone's personal

legal affairs. He claims to have restricted his legal services to reviewing, mainly, her personal and professional contracts. However, he did endorse the money order in question, which on its face reads in pertinent part:

To: Maxwell T. Cohen—for Nina Simone

. . . .

If money order is cashed by Miss Simone or Mr. Cohen it will represent a commitment that Miss Simone will appear in concert Aug. 16, 73 for Black Expo at Civic Center, Phila.

Black Expo Inc. 3649 Broad St. Phila. PA 215–LI6–6550

Cohen avers by affidavit that he has been a member in good standing of the New York Bar for over forty years. This allegation is persuasive that Cohen would have informed his client of the receipt and deposit of this sum in her personal account, as well as the terms upon which he accepted and endorsed the check for her.

Cohen's endorsement further amplifies requisite contacts with Pennsylvania. His endorsement in New York presumably caused funds to flow from Pennsylvania to New York through Western Union. Thus, Cohen's endorsement of the money order, his alleged communications with the Pennsylvania plaintiffs, and his general role as Simone's attorney, should have made it forseeable to him that under those circumstances, he could be haled into a Pennsylvania court if a dispute arose between Simone and the Black Expo, Inc. *World-Wide Volkswagen v. Woodson, supra,* 444 U.S. at 297, 100 S.Ct. at 567.

By a fair preponderance of the evidence the court is thus convinced that plaintiffs have alleged and proved sufficient facts to establish *in personam* jurisdiction over Cohen.

### ■ II. *Subject Matter Jurisdiction*

The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparent-

ly made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of the suit which reduce the amount below the statutory limit do not oust jurisdiction.

*St. Paul Mercury Indemnity Co. v. Red Cab Company,* 303 U.S. 283, 288–290, 58 S.Ct. 586, 590–591, 82 L.Ed. 845 (1938) (footnotes omitted). *See also, Gonzalez v. Young,* 560 F.2d 160, 164 (3d Cir. 1977), *aff'd,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Albright v. R. J. Reynolds Tobacco Co.,* 531 F.2d 132, 135–136 (3d Cir. 1976), *cert. denied,* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976); *Nelson v. Keefer,* 451 F.2d 289 (3d Cir. 1971). As the Third Circuit stated in *Nelson,* "[T]o find plaintiff's claim lacking in 'good faith', the court must be able to conclude from the record before him that the plaintiff cannot recover a sum by way of damages above the $10,000˙jurisdictional floor." 451 F.2d at 293.

■ Plaintiffs allege in Counts I and III a breach of contract. In Count II, they allege that Cohen fraudulently induced plaintiffs to send defendant the money order when he knew that Simone would not perform at the Civic Center and that as a result of this representation, plaintiffs suffered damages exceeding $10,000. In Count IV, plaintiffs claim damages for intentional infliction of emotional distress ex-

ceeding $10,000. Whether or not these allegations are true, the amount in controversy has been sufficiently alleged to exceed $10,000, exclusive of interests and costs.[1] Therefore, this court holds that it does have jurisdiction by reason of diversity of citizenship and amount.

Defendant has also failed to persuade the court that the complaint has fatal defects simply because plaintiffs improperly designated Count III "Trespass" rather than "Assumpsit." Plaintiffs need not have labelled these counts at all. In *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) the Court stated:

[A]ll the rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice;' we have no doubt that petitioners' complaint adequately set forth a claim and gave respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

(citations and footnotes omitted.)

III. *Failure to State a Claim*

■ Defendant also moves to dismiss alleging that plaintiffs have failed to state a claim upon which relief can be granted. A complaint should not be dismissed on this basis unless it appears beyond doubt that no set of facts can be proved by the plaintiffs which would entitle them to relief. *Conley v. Gibson, supra*, 355 U.S. at 45–46, 78 S.Ct. at 101–102 (footnote omitted). *Accord, Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251; *Haines v. Kerner*, 404 U.S. 519, 520–521, 92 S.Ct. 594, 595–596, 30 L.Ed.2d 652 (1972). The Third Circuit has stated:

[T]he plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn. The decision disposing the case is then purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations, he or she would be unable to prevail.

*Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977); *see, Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).

■ If the court considers matters outside the pleadings, a Rule 12(b)(6) motion is "converted" into a motion for summary judgment. *Crown Central Petroleum Corp. v. Waldman*, 634 F.2d 127 at 129 (3d Cir. 1980); *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d at 891. So that the parties may present pertinent evidence, the court should normally give the

---

1. Count I seeks recovery of the face amount of the money order, i. e., $3,797.55. However, paragraph 8 thereof states that the amount in controversy exceeds $10,000 and the court is persuaded that the allegation is sufficient to satisfy the legal certainty standards necessary for subject matter jurisdiction. Further, the court is persuaded that Count II alleging fraud satisfies the *Red Cab* legal certainty requirement. The court is not convinced that if plaintiffs succeeded in their action for fraud they would nonetheless be legally barred from recovering more than $10,000. Similarly, regarding the claim under Count III, if defendants breached their performing arts contract it is reasonably forseeable that plaintiffs might suffer consequential damages exceeding $10,000 from loss ticket sales, provision of security, lighting and other overhead costs. This too suffices to constitute subject matter jurisdiction for it cannot be said to a legal certainty that under no circumstances would plaintiffs be able to recover more than $10,000. As to Count IV which alleges intentional infliction of emotional distress, Pennsylvania recognizes such a claim as a tort. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273–1275 (3d Cir. 1979) (*en banc*).

parties ten days notice before converting a Rule 12(b)(6) motion to a motion for summary judgment. *Crown Central Petroleum,* at 129. In this case, not only was such notice given by the court at a pretrial conference on February 14, 1980, but the parties have known since the filing of the 12(b)(6) motion with supporting affidavit that the motion would be considered under Rule 56. Plaintiffs have had full opportunity to submit counter-affidavits and have, in fact, presented such a document. Both parties have argued at length all materials outside of the pleadings to which the court now refers. Moreover, defendants' motion is entitled a motion to dismiss or for summary judgment.

## A. *Choice of Law*

Before determining the Rule 12(b)(6) motion on any basis, since the parties appear to have had contacts with both New York and Pennsylvania, the court must decide which state's substantive law applies.

■ In deciding which state's law governs the action, the court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975) (*per curiam*). *Accord, Melville v. American Home Assurance Co.,* 584 F.2d 1306 (3d Cir. 1978). In *Melville,* the Third Circuit applied the Pennsylvania choice of law rules to a life insurance contract which decedent/insured, a lifelong Delaware resident, purchased from an insurance broker in Delaware. The parent company had its main office in New York. The beneficiary was a Pennsylvania resident.

The threshold task in this analysis is to determine whether the flexible conflicts methodology adopted by the Pennsylvania Supreme Court for tort actions in *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964), has been extended to contract actions. Although no Penn-

sylvania case clearly so holds, we think, as explained below, that the evolution of Pennsylvania conflicts decisions ineluctably leads to the conclusion that the *Griffith* approach will be employed in contract actions when the occasion arises. 584 F.2d at 1311 (footnotes omitted).

Accordingly, to decide the applicable state law, *Melville* requires this court to use a contacts/interest analysis test. In the instant case, the parties' contacts with Pennsylvania are as follows:

1. Plaintiffs are Pennsylvania residents.

2. The alleged contract is for services to be performed in Pennsylvania.

3. Cohen's endorsement of the money order caused funds to flow from a financial institution in Pennsylvania to Simone's New York account.

4. When defendant, Simone, failed to appear, plaintiffs suffered economic loss in Pennsylvania.

On the other hand, New York's contacts are only Cohen's residency and citizenship and his endorsement of the money order.

■ The court is persuaded that Pennsylvania has greater contacts with the parties than does New York because the alleged contract provided for services to be rendered in Pennsylvania, Cohen's alleged fraudulent representations caused monies to flow from Pennsylvania to New York, and Simone's failure to appear caused consequential damages in Pennsylvania. The contract's creation, arguably in New York,[2] is by itself insufficient to outweigh the contacts which Pennsylvania has with the parties. Moreover, Pennsylvania has an interest in adjudicating this action because plaintiffs are Pennsylvania residents whose choice of forum in a diversity action is entitled to great weight. *Shutte v. Armco Steel Corp.,* 431 F.2d 22 (3d Cir. 1970).

Pennsylvania also has an interest in deciding this dispute because the court has *in personam* jurisdiction, and the parties have

**2.** The endorsement in New York may be regarded the last act necessary to consummate the agreement. In that event, under Pennsyl-

vania law, New York would be the place of contracting. *Frankel v. Johns-Manville,* 257 F.2d 508 (3d Cir. 1958).

the substantial contacts with the forum state outlined previously. In contrast, New York's interest in adjudicating this dispute is insufficient to justify the application of its law. The only significant acts occurring in New York were the endorsement and deposit of the money order. No services were to be rendered in New York, and no economic loss was suffered there. Accordingly, applying the contacts/interest analysis test required by *Melville*, the court holds that the law applicable to the facts of this case is that of Pennsylvania.

**B.** *Dismissal of Counts I, III and IV*

Taking plaintiffs' allegations as true for purposes of the Rule 12(b)(6) motion to dismiss, the court finds that Count II of the complaint states a claim upon which relief may be granted, but Counts I, III and IV do not.

Count II alleges common law fraud and tortious interference with business relationships. The Pennsylvania statute of limitations for fraud and tortious interference with business relationships to be applied by this Court is six (6) years. *Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 at 607, n.2 (3d Cir. 1980) (six (6) year statute applied to common law fraud); *Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894, 902–903 (3d Cir. 1977) (six (6) year statute applies in Pennsylvania to tortious interference with business relationships).

Counts I and III allege breach of contract and claim recovery for consequential damages. However, plaintiffs do not allege that there was a written contract and based upon the evidence taken in the light most favorable to the plaintiffs the court finds none to have existed. If any contract existed, it was oral. As to these Counts, the court finds that the applicable statute of limitations, four (4) years, 42 Pa.C.S.A. § 5525 (Supp.1980), expired prior to commencement of the action.

All the alleged contractual terms and conditions were by parol except one, namely, the telegraphic money order which stated if Cohen or Simone cashed the money order it would represent a commitment on Simone's part to appear in concert for Black Expo at the Civic Center on August 16, 1973. At best, the statement on the money order's face merely stated terms upon which Cohen and Simone accepted the funds. Regardless of whether the printed statement is called a condition precedent, a fundamental term, or merely a condition, it was not the contract. The contract was the parties' oral agreement regarding the date, time and place of the performance, the contract price, order and time of performance, audio equipment and sleeping arrangements for Simone. (Culbreth's Affidavit, ¶ 5).

The endorsement of the money order was the act necessary to effectuate the agreement. However, endorsement, without more, did not convert the money order into the contract. What constitutes a contract depends on the intention of the parties. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1271 (3d Cir. 1979). Plaintiffs have not made out a *prima facie* case on a preponderance of the evidence that the parties intended the written money order to be the agreement. Indeed, plaintiffs do not claim either in their complaint or affidavits that the money order was a written contract. In their briefs, plaintiffs argue that the money order is such a contract, however, a brief is argument, not competent evidence. *Winston v. Waldfogel*, 292 F.Supp. 473, 476 (S.D.N.Y.1968).

Even assuming that the money order was the contract, plaintiffs cannot avoid dismissal of their contract claims. The statement on the money order reads in pertinent part as follows:

Pay Amount: Thirty-Seven Hundred Fifty dollars

To: Maxwell Cohen—for Nina Simone

. . . .

½ depost [sic; illegible]

Black Expo Inc.—I. Jenkins

If money order is cashed by Miss Simone or Mr. Cohen it will represent a commitment that Miss Simone will appear in concert Aug. 16, 73 for Black Expo at Civic Center Phila. Black Expo Inc. 3649 Broad St. Phila Pa 215–LI6–6550

This language does not constitute any commitment for Cohen to appear at the Civic Center. It did not indicate that Cohen held himself out to be personally liable if Simone failed to appear. If it were a contract, then the endorsement of the money order only bound Simone to appear and subjected her to individual liability for breach of agreement. The affidavit of Stanley Culbreth dated February 1, 1980, which plaintiff's attorney submitted at oral argument, states that Cohen held himself out and agreed to be personally liable if Simone failed to appear. It is apparent from the face of the money order that this condition, essential certainly as to Cohen, is conspicuously absent.

■ The parol evidence rule provides that the written agreement is the contract, and prior and contemporaneous oral representations are normally inadmissible to alter or modify its terms. *U.S. Gypsum Co. v. Schiavo Brothers, Inc.*, 450 F.Supp. 1291, 1302 (E.D.Pa.1978). Exceptions to the parol evidence rule exist to explain essential written terms in instances of fraud, ambiguity, mistake or accident but not to create them. *Id.; see, also, Walther & CIE v. U.S. Fidelity & Guaranty Co.*, 397 F.Supp. 937, 941–942 (M.D.Pa.1975). The money order states that if Simone or Cohen endorsed it, it would constitute a commitment that *Simone* would appear. There is no indication whatsoever that the endorsement would make Cohen personally liable if Simone failed to appear. Indeed, the money order shows that Cohen himself received no consideration for allegedly agreeing to make himself personally liable if Simone failed to appear. The money order was made payable to Cohen for Simone's benefit. It manifests no ambiguity which requires explanation. To the extent that any claim of fraud is cognizable in this complaint, it comes under Count II.

■ Count IV must also be dismissed because it alleges a tort, intentional infliction of emotional distress, to which the two (2) year statute of limitations applies. 42 Pa.C.S.A. § 5524(2) (Supp.1980), *Chuy v. Philadelphia Eagles Football Club, supra.*

As to the punitive damage aspect of Count IV, the court reaffirms its recent holding which agrees with other courts of this Circuit that Pennsylvania law precludes recovery of punitive damages for a breach of contract. *Bunion v. Allstate Insurance Co.*, 502 F.Supp. 340 at 341 (E.D.Pa.1980); *accord, Fisher v. Provident Washington Insurance Co.*, No. 79–4153 slip op. at 6–7 (E.D.Pa. filed Oct. 7, 1980).

### C. Count II States A Cognizable Claim

Plaintiffs allege that on or about August 2, 1973, the parties contracted for Simone to appear at the Civic Center in concert when Cohen knew that Simone would not appear and that, relying on defendants' false representation, plaintiffs sent Cohen the money order.

■ This court, sitting in diversity, must apply state law regarding what constitutes fraud. In this regard, the court finds helpful a recent statement of the Pennsylvania State Supreme Court:

Statements of intention, however, which do not, when made, represent one's true state of mind are misrepresentations known to be such and are fraudulent. The *Restatement, Contracts*, § 471(a) defines fraud as a "misrepresentation known to be such, . . . ." Section 470(1) defines a misrepresentation as "an assertion not in accordance with the facts," and *comment* b to § 470 states that "any state of mind is a fact." See 37 Am. Jur.2d *Fraud and Deceit*, § 59 (1968). This knowing misrepresentation of one's intention or state of mind is a misrepresentation of an existing fact. *See Rose v. Rose*, 385 Pa. 427, 123 A.2d 693 (1956).

*Watercolor Group v. Wm. H. Newbauer*, 468 Pa. 103, 115–116, 360 A.2d 200 (1976).

■ Pennsylvania law recognizes that a contract may exist though induced by fraud. *Schwartz v. McCloskey*, 156 Pa. 258, 264, 27 A. 300 (1893). Such transactions are voidable by the innocent party, *In Re Bowen*, 138 F.2d 22, 24 (3d Cir. 1943), cert. denied, 320 U.S. 799, 64 S.Ct. 430, 88 L.Ed. 482 (1944); *Greenwood v. Kadoich*, 239 Pa.

Super. 372, 378, 357 A.2d 604 (1976), or by the trial court. *Watercolor Group v. Wm. H. Newbauer*, 468 Pa. 103, 112, 360 A.2d 200 (1976).

■ Plaintiffs have alleged that defendants made fraudulent representations of an existing fact, i. e., that Simone intended to and would appear when she had no intention of doing so. Allegedly defendants made a misrepresentation known to be such. *See, Watercolor Group v. Wm. H. Newbauer*, 468 Pa. at 115–116, 360 A.2d 200. These allegations suffice to meet Rule 9(b)'s specificity requirements regarding common law fraud. Furthermore, defendants have notice of the charges to which they must respond in preparing a defense.

In an action claiming damages from a brokerage house for excessive trading of a customer's account in violation of the federal securities laws, the Third Circuit held that the six (6) year statute of limitations applied to an action for common law fraud. *Biggans v. Bache Halsey Stuart Shields, Inc.*, at 607 n.2 (3d Cir. 1980). *See also, Bohem v. Butcher and Singer*, 427 F.Supp. 355, 357 (E.D.Pa.1977); *Tober v. Charnita, Inc.*, 58 F.R.D. 74, 84 (M.D.Pa.1973). The Third Circuit left open the question of whether the Pennsylvania state legislature implicitly changed the common law fraud statute of limitations period from six (6) years to two (2) years when the legislature adopted the Judiciary Act of 1976 ("The Act"), effective June 27, 1978. The *Biggans* Court stated:

> Prior to June 27, 1978 the statute of limitations for a common law fraud action was six years. Pa.Stat.Ann. tit. 12, § 31 (Purdon 1953); *Home Life Ins. Co. v. Greenspan*, 360 Pa. 542, 63 A.2d 72 (1949); *Flach v. Integrity Trust Co.*, 134 Pa.Super. 456, 4 A.2d 212 (1939). On June 27, 1978, the Judiciary Act of 1976, which created the Judicial Code became effective. The Code repealed various statutes of limitation including Pa.Stat.Ann. tit. 12, § 31, and established a new limitations scheme. See Act of July 9, 1976, Act No. 142, 1976 Pa. Laws 586 (codified at 42 Pa.Cons.Stat. §§ 5521–5536 (1978). Un-

> der the new scheme, it is unclear whether the two year period applicable to actions for "taking, detaining or injuring personal property...." *id.* § 5524(3) or the six-year catchall provision, *id.* § 5527(6), applies to an action based on common law fraud.... We need not decide that issue because it would not make a difference under the circumstances presented here.

At 607, n.2 (citations omitted).

The new two year statute of limitations applies to a wide range of torts including assault, battery, false imprisonment, false arrest, malicious prosecution and malicious abuse of process, 42 Pa.C.S.A. § 5524(1) (Supp.1980); negligence, 42 Pa.C.S.A. § 5524(2) (Supp.1980); trespass to land, 42 Pa.C.S.A. § 5524(4) (Supp.1980); and (possibly to) conversion and trespass to chattels, 42 Pa.C.S.A. § 5524(3) (Supp.1980). However, Section 5524 does not address fraud. A review of the legislative history of the Judiciary Act of 1976 does not reveal any intention by the legislature to change the common law fraud statute of limitations of six (6) years. *See, Comment, Securities Regulation: Statute of Limitations Applicable to 10b–5 Actions Arising in Pennsylvania*, 53 Temp.L.Q. 70, 81 (1980). The Act does consider fraud in Section 5532(c) which provides that in civil actions involving a trustee's breach of an express or implied trust, the statutory period does not begin to run until the fraud is, or could have been by reasonable diligence, discovered. Similarly, Section 5504(b) of the Act allows the court to extend the statutory period to relieve fraud or its equivalent in certain circumstances. However, these statutory provisions only demonstrate that the legislature did consider the subject of fraud, had ample opportunity to provide expressly a new statutory period if it desired and that it did not. This court must decide whether the legislature effected by implication a drastic change in the common law statutory period. In that regard, the Supreme Court of Pennsylvania has stated guidelines for interpreting statutes such as Section 5524.

When confronted with questions of statutory construction, this Court has re-

peatedly held that the words of a statute are to be interpreted in light of the antecedent case law. *Tarlo's Estate*, 315 Pa. 321, 172 A. 139 (1934). Thus, legislative intent to effectuate a drastic change in the law is not to be inferred by mere omission and implication. *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759 (1971). *Truck Terminal Realty Co. v. Commonwealth of Pa.*, 486 Pa. 16, 23, 403 A.2d 986 (1979).

In the absence of state law precedent post dating the Judiciary Act or a clearly manifested legislative intent, the court cannot hold that a drastic change of the common law period from six (6) years to two (2) years was intended. A district court sitting in diversity must apply state law. Until the Pennsylvania courts or legislature speak clearly on the issue, this court is bound to apply the six (6) year period which existed at the time the Act became effective.

IV. *Conclusion*

Accordingly, as to Count II, the court holds that plaintiffs have stated a claim upon which relief may be granted and Cohen's motion to dismiss that count is DENIED.

Counts I, III, and IV of the complaint are DISMISSED as to Cohen.

Cohen's alternative motion for summary judgment as to Count II is DENIED at this time because there is a genuine dispute as to a material issue, *i. e.*, whether it was Cohen who negotiated a performance contract on behalf of Simone and, if so, whether he did it with fraudulent intent.

Cohen's alternative motion for a more specific pleading is DENIED. The tools of discovery are more than adequate to shape the ultimate questions for disposition.

In view of plaintiffs' failure to serve the remaining named defendants, plaintiffs shall be required to show cause why the complaint should not be dismissed as to them for lack of prosecution or other action taken.